**UNITED STATES ex rel. GUEST v. PERKINS, Secretary of Labor, et al.**

No. 87423.

District Court of the United States for the District of Columbia.

Dec. 7, 1936.

George W. Dalzell, of Washington, D. C., and Milbank, Tweed, Hope & Webb, of New York City (Harrison Tweed, Edwin Borchard, and Wilber Stammler, all of New York City, of counsel), for petitioner.

Leslie C. Garnett, U. S. Atty., and David A. Pine, Asst. U. S. Atty., both of Washington, D. C. (Charles O. Gregory, Sol. of Labor, and Albert E. Reitzel, Asst. Sol. of Labor, both of Washington, D. C., of counsel), for respondents.

BAILEY, Justice.

The petitioner, Winston Guest, was born in England in 1906. His mother was born in Pennsylvania and married his father, an Englishman, in England in 1905, where all there resided until 1919, when petitioner's parents separated by mutual consent, and with an agreement that the mother should have the custody of petitioner. The mother and child then came to this country, and a record known as an immigration record or manifest was made under the direction of the United States Commissioner of Immigration at Ellis Island, in which petitioner was described as an alien. Both mother and son have continued to reside in the United States ever since. After the passage of the Cable Act in 1922 (8 U.S.C.A. §§ 9, 10, 367–370), which provided a short form for the resumption of citizenship by a woman who had theretofore lost her United States citizenship, by reason of her marriage to an alien, Mrs. Guest made an application to a United States District Court in New York for resumption of United States citizenship, and in 1923 that court issued an order conferring such citizenship upon her.

In 1934, after some question had arisen as to the citizenship of petitioner, he sought a ruling by the respondent, MacCormack, as Commissioner of Immigration and Naturalization, to the effect that he became a citizen of the United States at birth, that the record of his entry at the Port of New York as an alien be corrected, and a further ruling that he was not entitled to and did not need a certificate of derivative citizenship as provided by section 399c (a) of title 8 of the U.S.C.A. for the reason that he was born a citizen of the United States. These requests were denied under the direction of the respondents upon the ground that on the facts and the applicable law the petitioner was not an American citizen.

Later on February 4, 1936, petitioner, saving and reserving his claim to his being a natural-born citizen, applied for a certificate of derivative naturalization, which was denied upon the same grounds upon which the denials of his former application were based.

Thereupon petitioner filed his petition in this court seeking the issuance of a declaratory judgment and a writ of mandamus to show that he is a natural-born citizen of the United States and to have the record of his entry changed accordingly, and in the alternative to show that he is a naturalized citizen by virtue of his mother's resumption of citizenship and to have a certificate of derivative citizenship issued to him.

The respondents answered and petitioner filed a general traverse. To the latter the respondents demurred, and this demurrer, taken in connection with the stipulation of counsel, raises the question of whether, under the facts, the substance of which is stated above, the petitioner is entitled to the relief prayed.

Petitioner claims that he is a natural-born citizen of the United States by reason of the fact that his mother was born in this country and did not lose her citizenship by marriage with an Englishman. I think that this question is disposed of by the Convention of May 13, 1870, between the United States and Great Britain which provided: "Citizens of the United States of America who have become, or shall become, and are naturalized according to law within the British dominions as British subjects, shall, subject to the provisions of Article II., be held by the United States to be in all respects and for all purposes British subjects, and shall be treated as such by the United States" (16 Stat. 775, art. 1) ; and by the British statute of 1870 which provided: "A married woman shall

be deemed a subject of the State of which her husband is for the time being a subject."

Petitioner contends that the word "naturalized" in the treaty does not refer to naturalization by marriage, but that to constitute naturalization there must be some positive act of renunciation of the former allegiance or some pledge of the new. I do not think that this can be maintained. A minor may become a citizen of this country merely by the naturalization of his parent, and marriage is a voluntary act which may cause the loss of citizenship when the statute so provides. Mackenzie v. Hare, 239 U.S. 299, 36 S.Ct. 106, 60 L. Ed. 297, Ann.Cas. 1916E, 645.

The construction of this treaty by Congress is also against the petitioner's contention. On May 18, 1898, some years before the marriage of petitioner's mother, Congress passed a joint resolution in which it recited that "Whereas Nellie Grant Sartoris * * * married * * * Algeron Charles Frederick Sartoris, a subject of the Queen of Great Britian, and emigrated to Great Britian, becoming thereby, under the laws of Great Britian, a naturalized British subject, to be recognized as such by the United States, according to the provisions of the Convention Relative to Naturalization between the United States and Great Britian of the thirteenth of May, eighteen hundred and seventy; and" readmitted her to citizenship. This shows the construction that Congress put upon the law as it existed before Mrs. Guest's marriage, and would fully apply in her case. I am of the opinion therefore that the petitioner did not become a citizen of the United States at birth by reason of the citizenship of his mother at that time.

Petitioner also relies upon section 2172 of the Revised Statutes (8 U.S.C.A. § 7) which provides inter alia: "The children of persons who now are, or have been, citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens thereof."

This provision is taken from the Act of 1802 (2 Stat. 155, § 4), which, as to this provision, has always been held not to be prospective in its operation and to apply only to those parents who were in 1802, or had been, citizens. Petitioner contends however that inasmuch as this statute was brought forward into the Revised Statutes enacted in 1874, this provision by its reenactment took effect as of 1874, and therefore applied to petitioner's mother born in 1872. But section 1993 of the same Revised Statutes (8 U.S.C.A. § 6 and note) provided: "All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States."

The latter section would exclude petitioner, whose father never resided in this country.

But I think that it is immaterial, for the purposes of the instant suit, whether petitioner became an American citizen at his birth by reason of his mother's citizenship or later by means of the repatriation of his mother. I do not think that the authorities sustain his claim that he is a natural-born citizen within the meaning of the provisions of the Constitution, either of section 1, clause 4, of article 2, that "No person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President," or of the Fourteenth Amendment, that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."

In the case of United States v. Wong Kim Ark, 169 U.S. 649, at page 688, 18 S. Ct. 456, 472, 42 L.Ed. 890, it was said: "This sentence of the fourteenth amendment is declaratory of existing rights, and affirmative of existing law, as to each of the qualifications therein expressed,—'born in the United States,' 'naturalized in the United States,' and 'subject to the jurisdiction thereof'—in short, as to everything relating to the acquisition of citizenship by facts occurring within the limits of the United States. But it has not touched the acquisition of citizenship by being born abroad of American parents; and has left that subject to be regulated, as it had always been, by congress, in the exercise of the power conferred by the constitution to establish an uniform rule of naturalization."

And again, 169 U.S. 649, on page 702, 18 S.Ct. 456, 477, 42 L.Ed. 890: "Citizenship by naturalization can only be acquired

by naturalization under the authority and in the forms of law. But citizenship by birth is established by the mere fact of birth under the circumstances defined in the constitution. Every person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization. A person born out of the jurisdiction of the United States can only become a citizen by being naturalized, either by treaty, as in the case of the annexation of foreign territory, or by authority of congress, exercised either by declaring certain classes of persons to be citizens, as in the enactments conferring citizenship upon foreign-born children of citizens, or by enabling foreigners individually to become citizens by proceedings in the judicial tribunals, as in the ordinary provisions of the naturalization acts."

Petitioner claims that these statements are mere dicta as applied to his claim and not entitled to consideration. But the Supreme Court in that case went fully into the whole question of citizenship in all of its aspects and this court could not ignore the carefully expressed opinions of the Supreme Court, even if this court should differ from that opinion.

■■■■ On the question of derivative citizenship, the statute under which petitioner claims that he is entitled to a certificate of naturalization (8 U.S.C.A. § 399c (a) provides: "Any individual over twenty-one years of age who claims to have derived United States citizenship through the naturalization of a parent * * * may * * * make application to the Commissioner of Immigration and Naturalization * * * for a certificate of citizenship. Upon proof to the satisfaction of the commissioner that the applicant is a citizen and that the alleged citizenship was derived as claimed, * * * such individual shall be furnished a certificate of citizenship by the commissioner."

If the petitioner were a citizen under section 2172, Rev.Stat. (8 U.S.C.A. § 7) by reason of his mother having never lost her citizenship, he would not be entitled to the certificate which he seeks under section 399c (a) of 8 U.S.C.A., above quoted, for the certificate is to issue only to those who claim through the naturalization of a parent.

But his claim to a certificate of citizenship by virtue of his mother's repatriation is based upon more solid grounds.

Act March 2, 1907, § 5 (8 U.S.C.A. § 8) provides: "A child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the parent, where such naturalization or resumption takes place during the minority of such child. The citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States."

In this case petitioner's mother resumed her American citizenship in 1923, when petitioner was a minor, and had brought petitioner with her. It would seem that he · clearly comes within the provision of the statute; but respondents claim that the word "parent" does not include a mother, who had not been divorced nor was a widow. Petitioner's parents had separated by mutual consent, under an agreement in which the custody of petitioner was given to his mother. She established her domicile in this country and continued to live here with her child, and there is nothing on the face of the statute to support the contention of the respondents.

In 1934, the act last cited was amended to read as follows: "A child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship *by the father or the mother:* Provided, That such naturalization or resumption shall take place during the minority of such child: And provided further, That the citizenship of such minor child shall begin five years after the time such minor child begins to reside permanently in the United States. (As amended May 24, 1934, c. 344, § 2, 48 Stat. 797.)" (Italics supplied.) 8 U.S.C.A. § 8.

In reporting this act to the Senate the committee made this comment: "Section 2 clarifies the present uncertainties of the law so that naturalization of an alien mother will confer United States citizenship upon her minor children born abroad who are admitted for permanent residence in the United States during their minority. The present law appears to confer United States citizenship upon such children but the uncertainty in the law makes necessary the clarifying language of the present bill."

I think that the amended act was passed not to change the former law but to clarify it, by expressing more clearly the intent of Congress. It is true of course that an act

passed for the purpose of clarifying a former act does not change the law as it had theretofore existed, and could not divest parties of rights which had been acquired under the original act, but here the respondents had acquired no rights under the original act. They are merely agencies through which the intent of Congress as expressed in its statutes is carried out, and it would seem to be incumbent upon them to respect the construction which Congress has put upon its statutes.

I think that under the law petitioner became a naturalized citizen upon the resumption of citizenship by his mother. The facts are admitted by the demurrer, so that for the purposes of the hearing on the demurrer there can be no question as to the evidence before the Commissioner having been satisfactory to him. Under the facts admitted by the demurrer it would be his plain ministerial duty to issue the certificate.

No declaratory judgment will be needed, if the writ of mandamus shall issue.

The demurrer to the traverse should be overruled.