**KLETTER v. DULLES, Secretary of State.**

Civ. A. No. 3538–50.

United States District Court
District of Columbia.

April 17, 1953.

As Amended May 18, 1953.

---

Jack Wasserman, Washington, D. C., for plaintiff.

Charles M. Irelan, U. S. Atty., Ross O'Donoghue, Asst. U. S. Atty., Washington, D. C., for defendant.

MORRIS, District Judge.

This is an action by the plaintiff to secure a declaratory judgment that he is an American citizen. Certain facts appear to be definitely established, others to be impossible of definite ascertainment from the evidence before the Court. The plaintiff was born in Palestine in 1911. He accompanied his mother, who came to this country on an immigration visa in January 1921, and was residing with her at the time of her naturalization on December 7, 1928, in the District Court of the United States, held at Philadelphia, Pennsylvania. In the certificate of naturalization of his mother the plaintiff was named as a minor child of 17 years, residing with her. In the petition for naturalization filed by Mrs. Elsie Kletter, mother of the plaintiff, she stated that her husband was deceased, and that the plaintiff was born in Palestine. On September 30, 1930, the plaintiff executed

an application for a passport as an American citizen, in which it is stated that his father was "deceased—1915." The plaintiff's testimony at the hearing in this case is that the statements contained in said application were filled in by his mother. Having received the passport, the plaintiff sought to obtain a visa to visit Palestine, which was then under the League of Nations mandate to the British Government. Having some difficulty in securing a visa from the British authorities in this country, the plaintiff made requests of the late Senator William H. King, of Utah, to assist him in securing authorization to travel to that country. Senator King's letter to the plaintiff, dated March 9, 1931, introduced in evidence by the plaintiff, and set forth in the margin,[1] refers to numerous statements made by the plaintiff, which were of course, communicated to the State Department. Obviously being of the view that the plaintiff did not acquire derivative citizenship from the naturalization of his mother when it appeared from plaintiff's statements that his father was still living, and there not appearing that there was any legal separation of the parents, or award of custody of the minor to the mother, the State Department demanded the surrender of the passport, which had been issued upon the representation that his father was de-

---

1. "Mr. David Kletter          March 9, 1931.
      "133 South Florida Avenue
        "Atlantic City, New Jersey
   "My dear Sir:
   "Pursuant to your request I have made some inquiry in regard to what steps you might take in order to obtain the necessary passport or visa to depart from the United States and to enter Palestine. I understand from your statements to me that you were born in Palestine, where your father resides. As I understand he has resided in Palestine many years and is a citizen and property holder in that country. As I am advised your mother came to the United States a number of years ago and you accompanied her; she had relatives living in the United States and intended, when she came, to return to Palestine. There was no separation between your father and your mother. It was her intention to rejoin your father after remaining some time in the United States. Owing to the unsettled conditions in Palestine she deferred returning and recently obtained naturalization papers in one of the courts in Pennsylvania having jurisdiction of this matter. However, she intends to return to Palestine in the near future and to rejoin her husband— your father there. As you have advised me you have not claimed citizenship in the United States but claim to be a citizen of Palestine and desire to return to Palestine and to live there with your father. You state to me that you are nineteen years of age; that it is claimed by some that because your mother obtained citizenship papers in the United States, automatically you became a citizen of the United States, and in order to return to Palestine would require a passport from the State Department of the United States. You also state that others contend that you did not lose your Palestinian citizenship because your mother obtained citizenship papers in the United States.

   "Mr. Flournoy of the State Department, with whom I spoke concerning your case, called my attention to a decision in the Federal Court of the United States. This decision is found in Volume 25, Second Series, of the Federal Reporter, [page 210] and was rendered by the United States District Court of New Jersey on March 1, 1928. In the syllabus of the decision this language occurs:
   " ' * * * Naturalization of mother does not confer citizenship on minor children, but their status is governed by nationality of father.'
   "My understanding is that the State Department would hold that you did not lose your Palestinian citizenship because of the action of your mother, and accordingly, as I understand Mr. Flournoy, the State Department would not grant you a passport as an American citizen. It would seem, therefore, that the representative of the British Government, who is in the United States, would have the authority to issue to you the necessary passport as a citizen of Palestine under which you could return to your own country.
                  "Very truly yours,
                  "(signed) William H. King."
   [During the course of plaintiff's testimony in this case, he stated that he had informed Mrs. Ruth B. Shipley, Chief of the Passport Division of the Department of State, that the statements he had made to Senator King were false, but, he explained, he stated this to Mrs. Shipley because he wanted to "please her," and he thought that would "make her feel good."]

ceased in 1915, prior to the naturalization of plaintiff's mother. In 1931 the plaintiff secured from the British Consul in this country an emergency laissez-passer, on the authority of which he traveled to Palestine. In an affidavit made by the plaintiff to the American Consul in Jerusalem in October 1932, he stated that, upon arrival in Palestine, he discovered there was no common tie of relationship between the individual who bore the name of his father and himself. He also stated at that time. that he could say nothing about his future until his legal course of study was completed in June 1935. He failed to furnish the American Consul with any evidence of the death of his father, any ecclesiastical divorce or separation between his father and mother, which he asserted at the hearing of the present case had taken place in Jerusalem, or any other data that would support the right of the mother to his custody at the time of her naturalization, and he has failed to produce any evidence to such effect in the present cause. The plaintiff has repeatedly stated, and so stated at the hearing in the present proceeding, that his father was alive, living in Jerusalem, subsequent to his return to that country.[2] It appears from a certified copy of a letter from the Commissioner of Immigration and Statistics, Acting Director, Department of Immigration, dated Jerusalem, March 30, 1940, that the plaintiff acquired Palestinian citizenship by naturalization under Article 7 of the Palestinian Citizenship Order, 1925, on the 22nd day of March 1935. The plaintiff explains variously this record: In his original complaint, that it

referred to a namesake; in his testimony, that it was a forgery; but the real contention made by him is that he was already a Palestinian citizen by virtue of the Palestinian citizenship orders which provided, that Turkish subject habitually resident in the territory of Palestine upon the first day of August 1925 shall become Palestinian citizens, and, save as provided in certain articles not material here, "The status of a child who has not attained the age of majority [will be governed] by that of its father." His contention in this regard is that his father became a Palestinian citizen at the time of the effective date of said order, August 1, 1925, which governed the citizenship of the plaintiff. His reasoning is that, having Palestinian citizenship, any naturalization was unnecessary and of no effect, and hence did not constitute an expatriation or forfeiture of his American citizenship, which he had acquired by derivation from his mother's naturalization. His further contention is that Palestine was not a sovereignty, and there could be no naturalization such as would bring about an expatriation, and finally that, in such naturalization proceedings he did not take an oath of allegiance, but only made affirmation, which he contends did not have the effect of an act of expatriation. In any event, by reason of such Palestinian naturalization, he secured a passport to visit England to carry on his legal studies. The plaintiff's pursuit of citizenship led him into difficulty there with the British Government, when he unsuccessfully contended that he was a British subject, and not an alien, and therefore was not required

2. Subsequent to the hearing in this case leave was granted, upon motion of plaintiff, to re-open the evidence for the purpose of permitting the introduction in evidence of a letter from Sarah Levy, Social Worker in the Government Hospital, in the Ministry of Health, State of Israel, dated March 30, 1953, addressed to the plaintiff, which letter was written in Hebrew, a translation thereof by Mordechai Shalev, Vice-Consul of the Embassy of Israel, Washington, D. C., being attached thereto, marked plaintiff's exhibits 7a and 7b. This letter makes reference to Ben Zion

Kletter, and states, among other things, that he is a patient in said hospital. The evidence was introduced as corroboration of the statement of the plaintiff in his testimony that his father is still living. The identity of the person referred to in the letter as the father of the plaintiff is that he has the same name as Benzion Kletter, also known as Bernard Kletter, referred to in paragraph 1(a) of defendant's request for admission and in paragraph (a) of plaintiff's response to such request for admission.

to leave England pursuant to an order made respecting him as a Palestinian citizen. This case, King v. Ketter is reported in Law Reports, 1 King's Bench Division, 1940, at page 787.

As already stated, the applicable law relating. to the Palestinian citizenship claimed by plaintiff by virtue of his father being a Turkish subject, habitually resident in the territory of Palestine upon the first day of August 1925, is found in certain Palestinian citizenship orders, introduced in evidence in this cause.[3] Further provisions of Palestinian citizenship law of 1925, also in evidence, provides that a minor child who· obtains the nationality of some other country by the parent becoming a naturalized citizen of such other country ceases to be a Palestinian citizen.[4] It would seem to follow conclusively that, if the plaintiff had derivative Palestinian citizenship from his father, he ceased to have such citizenship, if his mother's naturalization effectively made him an American citizen.

It is the contention of the plaintiff that his mother's naturalization did effectively make him an American citizen, and, notwithstanding the above quoted provision of Palestinian citizenship law, he retained Palestinian citizenship, which makes his subsequent naturalization there a futile act, not effective to result in expatriation. The applicable statute in force at the time of the naturalization of plaintiff's mother, and upon which is based the plaintiff's claim to derivative American citizenship, is Section 8, Title 8, U.S.C.[5] Also in force at the time of plaintiff's naturalization in Palestine in 1935 was Section 17, Title 8, U.S.C.[6] It is the contention of plaintiff that the provision of the statute relating to the citizenship of a minor child resulting from the naturalization of "the parent" means the naturalization of either the child's father or mother. It is to be noted that the statute was amended by Act of May 24, 1934, so as to provide for derivative citizenship of a minor child by the naturalization of "the father or mother". [7]

3. "1.—(I) Turkish subjects habitually resident in the territory of Palestine upon the 1st day of August, 1925, shall become Palestinian citizens."

"6. Save as provided in Articles 10 and 12 of this Order, for the purpose of Parts I and ·II of this Order the status of a married woman will be governed by that of her husband and the status of a child who has not attained the age of majority by that of its father." Palestinian Citizenship Orders, 1925 to 1941, Consolidated. [Section 1 comes under Part I, and Section 6 under Part II.]

4. "Sec. 14(1). Where a person ceases to be a Palestinian citizen, whether by declaration of alienage or otherwise, save in the case provided for by Article II of this order, every child of that person being a minor shall thereupon cease to be a Palestinian citizen, if such child has already obtained or obtains on its parent ceasing to be a Palestinian citizen, the Nationality of some other country." Flournoy & Hudson-Nationality Laws, pages 155–56.

"Sec. 15. A Palestinian citizen who, when in any foreign state and not under disability, by obtaining a certificate of naturalization or by any other voluntary and formal act, becomes naturalized therein, shall thenceforth be deemed to have ceased to be a Palestinian citizen." Ibid.

5. Sec. 8. " * * *; children, born abroad, of alien parents, by naturalization of parent. A child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the parent, where such naturalization or resumption takes place during the minority of such child * * *. The citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States." March 2, 1907, c. 2534, Sec. 5, 34 Stat. 1229.

6. Sec. 17. " * * * ; presumption. Any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, or when he has taken an oath of allegiance to any foreign state. * * * " March 2, 1907, c. 2534, Secs. 2, 7, 34 Stat. 1229.

7. "A child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the father or the mother: Provided, That such naturaliza-

Prior to the amendment of 1934 the statute had repeatedly been given administrative interpretation that the word "parent" meant the father, if living, and no legal custody of the child had been acquired by the mother.[8] The same principle was recognized in judicial decisions rendered before the amendment of 1934.[9] Subsequent to the amendment of the statute in 1934, this Court, speaking through Judge Bailey, in United States ex rel. Guest v. Perkins, D.C., 17 F.Supp. 177, 180, held that a minor child acquired American citizenship upon the repatriation of his mother, where the parents had separated by mutual consent, under an agreement in which the custody of the minor was given to the mother. In the course of that opinion, the report of the Senate Committee on the proposed amendment was quoted:

"Section 2 clarifies the present uncertainties of the law so that naturalization of an alien mother will confer United States citizenship upon her minor children born abroad who are admitted for permanent residence in the United States during their minority. The present law appears to confer United States citizenship upon such children but the uncertainty in the law makes necessary the clarifying language of the present bill."

The opinion then states:

"I think that the amended act was passed not to change the former law but to clarify it, by expressing more clearly the intent of Congress."

The contention of the plaintiff here is that in this view he did acquire American citizenship by virtue of his mother's naturalization, even though his father was then living and in the absence of any decree or agreement that his mother should have the custody of him. The answer to that is not without some doubt.[10] Of course, if the

tion or resumption shall take place during the minority of such child: And provided further, That the citizenship of such minor child shall begin five years after the time such minor child begins to reside permanently in the United States." as amended May 24, 1934, c. 344, Sec. 2, 48 Stat. 797. 8 U.S.C. Sec. 8. [Emphasis supplied.]

8. In the case of R. Bryan Owen, 36 Opinions of the Attorney General 197: In Citizenship of Minor Child, 37 Opinions of Attorney General 90. In the latter opinion Attorney General Mitchell stated at p. 94: "* * * It is my opinion that by virtue of the decree of divorce in this case the father has been permanently and definitely deprived of his legal status as a 'parent' as effectively for the purposes of Section 5 of the Act of 1907 as if he were deceased."

9. In re Bishop, D.C.W.D.Wash.1927, 26 F.2d 148; In re Citizenship Status of Minor, D.C.N.J., 25 F.2d 210.

10. Subsequent to the decision in Guest v. Perkins, supra, the Congress repealed the statute here being considered, as amended by the Act of May 24, 1934, and in its stead enacted the following on October 14, 1940:
"Sec. 714. * * *; both parents aliens, or one an alien and other a citizen subsequently losing citizenship
"A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
"(a) The naturalization of both parents; or
"(b) The naturalization of the surviving parent if one of the parents is deceased; or
"(c) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents; and if—
"(d) Such naturalization takes place while such child is under the age of eighteen years; and
"(e) Such child is residing in the United States at the time of the naturalization of the parent last naturalized under subsection (a) of this section, or the parent naturalized under subsection (b) or (c) of this section, or thereafter begins to reside permanently in the United States while under the age of eighteen years." Oct. 14, 1940, c. 876, Title 1, Subchap. III, Sec. 314, 54 Stat. 1145.
Subsequently that statute was repealed and on June 27, 1952, in its place another was enacted:
"Sec. 1432. Children born outside of United States of alien parents; conditions for automatic citizenship
"(a) A child born outside of the United States of alien parents, or of an alien

plaintiff did not acquire American citizenship by the naturalization of his mother, he is not now an American citizen, and the relief he seeks cannot be granted.

■ Accepting the construction of the statute contended for by the plaintiff; however, and assuming that he did acquire American citizenship by the naturalization of his mother, he then immediately ceased to have Palestinian citizenship under Palestinian law. His contention that his subsequent Palestinian naturalization was a futile and unnecessary act is obviously without basis. Such naturalization, according to the Palestinian law, constituted an act of expatriation under American law, and he ceased then to be an American citizen. It makes no difference whether, in the course of that naturalization, he was required, by the law of Palestine, to take an oath of allegiance or only to make affirmation. The American statute of expatriation is in the disjunctive.[11] Either naturalization in any foreign state, in conformity with its laws, *or* the taking of an oath of allegiance to any foreign state constitutes expatriation. The contention of the plaintiff that Palestine, while under the League of Nations mandate, was not a foreign state within the meaning of the statute is wholly without merit.

■ When the Congress speaks of a "foreign State," it means a country which is not the United States, or its possession or colony—an alien country —other than our own, bearing in mind that the average American, when he speaks of a "foreigner," means an alien, non-American. Uyeno v. Acheson, D.C., 96 F.Supp. 510.

■ Furthermore, it is not for the judiciary, but for the political branches of the Government to determine that Palestine at that time was a foreign state. This the Executive branch of the Government did in 1932 with respect to the operation of the most favored nations provision in treaties of commerce.[12]

It is urged that American citizenship is a priceless possession and one ought not lightly to be deprived of it. That is indeed true, and it is equally true that it is such a priceless possession that one ought not to trifle with it, negate it and abjure it, as the plaintiff in this case has done. This is not the case of some one unlearned and ignorant, but one whose passion to return to his native land, and there to pursue the study of law, which led him to admission to the bar as an advocate before the civil courts of Palestine, and later to pursue his study of the law in the famous Inns of Courts in London, dominated and frustrated any rights he might have had to American citizenship.

The relief sought by the complaint must be denied.

---

parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

"(1) The naturalization of both parents; or

"(2) The naturalization of the surviving parent if one of the parents is deceased; or

"(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

"(4) Such naturalization takes place while such child is under the age of sixteen years; and

"(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of sixteen years.

"(b) Subsection (a) of this section shall not apply to an adopted child." June 27, 1952, c. 477, Title III, ch. 2, Sec. 321, 66 Stat. 245.

It is not without significance that neither of these statutes could possibly be construed as the plaintiff contends the statute here under consideration should be construed.

11. See note 6, supra.

12. Hackworth's Digest of International Law, Vol. 1, at pages 103 and 115.