ALBERNAZ ET AL. *v.* UNITED STATES

No. 79–1709.  Argued January 19, 1981—Decided March 9, 1981

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, BLACKMUN, and POWELL, JJ., joined. STEWART, J., filed an opinion concurring in the judgment, in which MARSHALL and STEVENS, JJ., joined, *post*, p. 344.

*Judith H. Mizner* argued the cause for petitioners. With her on the briefs were *Martin G. Weinberg* and *Raymond E. LaPorte*.

*Mark I. Levy* argued the cause for the United States. With him on the brief were *Solicitor General McCree, Assistant Attorney General Heymann, Deputy Solicitor General Frey*, and *Mervyn Hamburg*.

JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioners were convicted of conspiracy to import marihuana (Count I), in violation of 21 U. S. C. § 963, and conspiracy to distribute marihuana (Count II), in violation of 21 U. S. C. § 846. Petitioners received consecutive sentences on each count. The United States Court of Appeals for the Fifth Circuit, sitting en banc, affirmed petitioners' convictions and sentences. *United States* v. *Rodriguez*, 612 F. 2d 906 (1980). We granted certiorari to consider whether Congress intended consecutive sentences to be imposed for the violation of these two conspiracy statutes and, if so, whether such cumulative punishment violates the Double Jeopardy

Clause of the Fifth Amendment of the United States Constitution. 449 U. S. 818 (1980).

The facts forming the basis of petitioners' convictions are set forth in the panel opinion of the Court of Appeals, *United States* v. *Rodriguez,* 585 F. 2d 1234 (1978), and need not be repeated in detail here. For our purposes, we need only relate that the petitioners were involved in an agreement, the objectives of which were to import marihuana and then to distribute it domestically. Petitioners were charged and convicted under two separate statutory provisions and received consecutive sentences. The length of each of their combined sentences exceeded the maximum 5-year sentence which could have been imposed either for a conviction of conspiracy to import or for a conviction of conspiracy to distribute.

The statutes involved in this case are part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1236, 21 U. S. C. § 801 *et seq.* Section 846 is in Subchapter I of the Act and provides:

> "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

This provision proscribes conspiracy to commit any offense defined in Subchapter I, including conspiracy to distribute marihuana which is specifically prohibited in 21 U. S. C. § 841 (a)(1). Section 846 authorizes imposition of a sentence of imprisonment or a fine that does not exceed the penalty specified for the object offense.

Section 963, which is part of Subchapter II of the Act, contains a provision identical to § 846 and proscribes conspiracy to commit any offense defined in Subchapter II, including conspiracy to import marihuana which is specifically prohibited by 21 U. S. C. § 960 (a)(1). As in § 846, § 963

authorizes a sentence of imprisonment or a fine that does not exceed the penalties specified for the object offense. Thus, a conspiratorial agreement which envisages both the importation and distribution of marihuana violates both statutory provisions, each of which authorizes a separate punishment.

Petitioners do not dispute that their conspiracy to import and distribute marihuana violated both § 846 and § 963. Rather, petitioners contend it is not clear whether Congress intended to authorize multiple punishment for violation of these two statutes in a case involving only a single agreement or conspiracy, even though that isolated agreement had dual objectives. Petitioners argue that because Congress has not spoken with the clarity required for this Court to find an "unambiguous intent to impose multiple punishment," we should invoke the rule of lenity and hold that the statutory ambiguity on this issue prevents the imposition of multiple punishment. Petitioners further contend that even if cumulative punishment was authorized by Congress, such punishment is barred by the Double Jeopardy Clause of the Fifth Amendment.

In resolving petitioners' initial contention that Congress did not intend to authorize multiple punishment for violations of §§ 846 and 963, our starting point must be the language of the statutes. Absent a "clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumers Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980). Here, we confront separate offenses with separate penalty provisions that are contained in distinct Subchapters of the Act. The provisions are unambiguous on their face and each authorizes punishment for a violation of its terms. Petitioners contend, however, that the question presented is not whether the statutes are facially ambiguous, but whether consecutive sentences may be imposed when convictions under those statutes arise from participation in a single con-

spiracy with multiple objectives—a question raised, rather than resolved, by the existence of both provisions.

The answer to petitioners' contention is found, we believe, in application of the rule announced by this Court in *Block-burger* v. *United States,* 284 U. S. 299 (1932), and most recently applied last Term in *Whalen* v. *United States,* 445 U. S. 684 (1980). In *Whalen,* the Court explained that the "rule of statutory construction" stated in *Blockburger* is to be used "to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively." 445 U. S., at 691. The Court then referenced the following test set forth in *Blockburger:*

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States, supra,* at 304.

Our decision in *Whalen* was not the first time this Court has looked to the *Blockburger* rule to determine whether Congress intended that two statutory offenses be punished cumulatively. We previously stated in *Brown* v. *Ohio,* 432 U. S. 161, 166 (1977), although our analysis there was of necessity based on a claim of double jeopardy since the case came to us from a state court, that "[t]he established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger* v. *United States* . . . ." Similarly, in *Iannelli* v. *United States,* 420 U. S. 770, 785, n. 17 (1975), we explained:

> "The test articulated in *Blockburger* v. *United States,* 284 U. S. 299 (1932), serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction. In determining whether sep-

arate punishment might be imposed, *Blockburger* requires that courts examine the offenses to ascertain 'whether each provision requires proof of a fact which the other does not.' *Id.,* at 304. As *Blockburger* and other decisions applying its principle reveal, . . . the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes."

In *Gore* v. *United States,* 357 U. S. 386 (1958), the Court rejected the opportunity to abandon *Blockburger* as the test to apply in determining whether Congress intended to impose multiple punishment for a single act which violates several statutory provisions. In reaffirming *Blockburger,* the Court explained:

"The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic." 357 U. S., at 389.

Finally, in *American Tobacco Co.* v. *United States,* 328 U. S. 781 (1946), defendants who had been convicted of conspiracy in restraint of trade in violation of § 1 of the Sherman Act (15 U. S. C. § 1), and conspiracy to monopolize in violation of § 2 (15 U. S. C. § 2), sought review of their convictions contending that separate sentences for these offenses were impermissible because there was "but one conspiracy, namely, a conspiracy to fix prices." 328 U. S., at 788. In rejecting this claim, the Court noted the presence of separate statutory offenses and then, relying on *Blockburger,* upheld the sentences on the ground that "§§ 1 and 2 of the Sherman Act require proof of conspiracies which are reciprocally distinguishable from and independent of each

other although the objects of the conspiracies may partially overlap." 328 U. S., at 788.

The statutory provisions at issue here clearly satisfy the rule announced in *Blockburger* and petitioners do not seriously contend otherwise. Sections 846 and 963 specify different ends as the proscribed object of the conspiracy—distribution as opposed to importation—and it is beyond peradventure that "each provision requires proof of a fact [that] the other does not." Thus, application of the *Blockburger* rule to determine whether Congress has provided that these two statutory offenses be punished cumulatively results in the unequivocal determination that §§ 846 and 963, like §§ 1 and 2 of the Sherman Act which were at issue in *American Tobacco,* proscribe separate statutory offenses the violations of which can result in the imposition of consecutive sentences.

Our conclusion in this regard is not inconsistent with our earlier decision in *Braverman* v. *United States,* 317 U. S. 49 (1942), on which petitioners rely so heavily. Petitioners argue that *Blockburger* cannot be used for divining legislative intent when the statutes at issue are conspiracy statutes. Quoting *Braverman,* they argue that whether the objective of a single agreement is to commit one or many crimes, it is in either case the agreement which constitutes the conspiracy which the statute punishes. "The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." 317 U. S., at 53. *Braverman,* however, does not support petitioners' position. Unlike the instant case or this Court's later decision in *American Tobacco,* the conspiratorial agreement in *Braverman,* although it had many objectives, violated but a single statute. The *Braverman* Court specifically noted:

"Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it

differs from successive acts which violate a single penal statute and *from a single act which violates two statutes.* See *Blockburger* v. *United States,* 284 U. S. 299, 301–[30]4; *Albrecht* v. *United States,* 273 U. S. 1, 11–12. The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute, § 37 of the Criminal Code. For such a violation, only the single penalty prescribed by the statute can be imposed." 317 U. S., at 54 (emphasis added).

Later in *American Tobacco,* the Court distinguished *Braverman:*

"In contrast to the single conspiracy described in [*Braverman*] in separate counts, all charged under the general conspiracy statute, . . . we have here separate statutory offenses, one a conspiracy in restraint of trade that may stop short of monopoly, and the other a conspiracy to monopolize that may not be content with restraint short of monopoly. One is made criminal by § 1 and the other by § 2 of the Sherman Act." 328 U. S., at 788.

See also *Pinkerton* v. *United States,* 328 U. S. 640, 642–643 (1946).

The *Blockburger* test is a "rule of statutory construction," and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. Nothing, however, in the legislative history which has been brought to our attention discloses an intent contrary to the presumption which should be accorded to these statutes after application of the *Blockburger* test. In fact, the legislative history is silent on the question of whether consecutive sentences can be imposed for conspiracy to import and distribute drugs. Petitioners read this silence as an "ambiguity" over whether Congress intended to authorize

multiple punishment.[1] Petitioners, however, read much into nothing. Congress cannot be expected to specifically address each issue of statutory construction which may arise. But, as we have previously noted, Congress is "predominantly a lawyer's body," *Callanan* v. *United States,* 364 U. S. 587, 594 (1961), and it is appropriate for us "to assume that our elected representatives . . . know the law." *Cannon* v. *University of Chicago,* 441 U. S. 677, 696–697 (1979). As a result, if anything is to be assumed from the congressional

---

[1] Both petitioners and the Government concede that the legislative history is silent with regard to whether Congress intended to impose multiple punishment for a single conspiracy which violates both § 846 and § 963. See Brief for Petitioners 18–19 and Brief for United States 25. In support of their argument that this silence equals "ambiguity," petitioners set forth an alternative explanation for the existence of the two separate conspiracy statutes. Petitioners contend that these different statutes were enacted because two different Committees in the House of Representatives had jurisdiction over the different Subchapters of the Act. The legislation was initially referred to the House Committee on Ways and Means and, following hearings, that Committee decided to consider only the provisions relating to imports and exports of narcotic drugs, transferring the remaining provisions—relating to domestic regulation and control—to the Interstate and Foreign Commerce Committee. Petitioners argue that this background supports a conclusion that the dual structure of the Act was a result of congressional concern with committee jurisdiction and not an intent by Congress to authorize multiple punishment. The Government persuasively responds to this speculation by noting that Congress was unquestionably aware of the existence of the separate conspiracy provisions inasmuch as the enacted legislation evidences a great deal of coordination between the two House Committees. For example, Subchapter II of the Act incorporates the basic standards of Subchapter I and makes numerous express references to the provisions of that Subchapter. The Subchapters also have parallel penalty structures imposing similar penalties on similar crimes, and these penalties represent a change from both the administration's proposal and prior law. Moreover, Congressman Boggs, the sponsor of the bill, stated when introducing a floor amendment to Title III (Subchapter II of the Act) that "section 1013 [now 21 U. S. C. § 963]—relating to attempts and conspiracies— . . . will take effect at the same time as the comparable provisions of title II [Subchapter I of the Act encompassing, *inter alia,* § 846]." 116 Cong. Rec. 33665 (1970).

silence on this point, it is that Congress was aware of the *Blockburger* rule and legislated with it in mind. It is not a function of this Court to presume that "Congress was unaware of what it accomplished. . . ." *U. S. Railroad Retirement Bd.* v. *Fritz,* 449 U. S. 166, 179 (1980).[2]

Finally, petitioners contend that because the legislative history is "ambiguous" on the question of multiple punishment, we should apply the rule of lenity so as not to allow consecutive sentences in this situation. Last Term in *Bifulco* v. *United States,* 447 U. S. 381 (1980), we recognized that the rule of lenity is a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. Quoting *Ladner* v. *United States,* 358 U. S. 169, 178 (1958), we stated: " 'This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.' " 447 U. S., at 387. We emphasized that the "touchstone" of the rule of lenity "is statutory ambiguity." And we stated: "Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent." *Ibid.* Lenity thus serves only as an aid for resolving an ambiguity; it is not to be used to beget one. The rule comes into operation "at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan* v. *United States, supra,* at 596.

---

[2] The petitioners also argue that in numerous instances the Government has charged a single conspiracy to import and distribute marihuana in *one* count. The inconsistency in the Government's behavior supports a finding of an absence of clear congressional intent with regard to the appropriateness of multiple punishment. The Government responds to this argument by noting that in 1977 the Justice Department advised all United States Attorneys that conspiracy to import and distribute should be charged as separate counts. We find that neither argument sheds light on the intent of Congress in this regard.

In light of these principles, the rule of lenity simply has no application in this case; we are not confronted with any statutory ambiguity. To the contrary, we are presented with statutory provisions which are unambiguous on their face and a legislative history which gives us no reason to pause over the manner in which these provisions should be interpreted.

The conclusion we reach today regarding the intent of Congress is reinforced by the fact that the two conspiracy statutes are directed to separate evils presented by drug trafficking. "Importation" and "distribution" of marihuana impose diverse societal harms, and, as the Court of Appeals observed, Congress has in effect determined that a conspiracy to import drugs and to distribute them is twice as serious as a conspiracy to do either object singly. 612 F. 2d, at 918. This result is not surprising for, as we observed many years ago, the history of the narcotics legislation in this country "reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter." *Gore* v. *United States,* 357 U. S., at 390.

Having found that Congress intended to permit the imposition of consecutive sentences for violations of § 846 and § 963, we are brought to petitioners' argument that notwithstanding this fact, the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution precludes the imposition of such punishment. While the Clause itself simply states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," the decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator. We have previously stated that the Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina* v. *Pearce,* 395 U. S. 711, 717 (1969) (footnotes omitted).

Last Term in *Whalen* v. *United States,* this Court stated that "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." 445 U. S., at 688; *id.,* at 696 (WHITE, J., concurring in part and concurring in judgment); *ibid.* (BLACKMUN, J., concurring in judgment). In determining the permissibility of the imposition of cumulative punishment for the crime of rape and the crime of unintentional killing in the course of rape, the Court recognized that the "dispositive question" was whether Congress intended to authorize separate punishments for the two crimes. *Id.,* at 689. This is so because the "power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress." *Ibid.* As we previously noted in *Brown* v. *Ohio,* "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." 432 U. S., at 165. Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.[3]

The judgment of the Court of Appeals is accordingly

*Affirmed.*

JUSTICE STEWART, with whom JUSTICE MARSHALL and JUSTICE STEVENS join, concurring in the judgment.

In *Whalen* v. *United States,* 445 U. S. 684, 688, the Court said that "the question whether punishments imposed by a

---

[3] Petitioners' contention that a single conspiracy which violates both § 846 and § 963 constitutes the "same offense" for double jeopardy pur-

court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized."

But that is a far cry from what the Court says today: "[T]he question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Consitution." *Ante,* at 344. These statements are supported by neither precedent nor reasoning and are unnecessary to reach the Court's conclusion.

No matter how clearly it spoke, Congress could not constitutionally provide for cumulative punishments unless each statutory offense required proof of a fact that the other did not, under the criterion of *Blockburger* v. *United States,* 284 U. S. 299.

Since Congress has created two offenses here, and since each requires proof of a fact that the other does not, I concur in the judgment.

---

poses is wrong. We noted in *Brown* v. *Ohio,* that the established test for determining whether two offenses are the "same offense" is the rule set forth in *Blockburger*—the same rule on which we relied in determining congressional intent. As has been previously discussed, conspiracy to import marihuana in violation of § 963 and conspiracy to distribute marihuana in violation of § 846 clearly meet the *Blockburger* standard. It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause. See, *e. g., Harris* v. *United States,* 359 U. S. 19 (1959); *Gore* v. *United States,* 357 U. S. 386 (1958). This is true even though the "single transaction" is an agreement or conspiracy. *American Tobacco Co.* v. *United States,* 328 U. S. 781 (1946).