560 So.2d 1231 (1990)
Steve Anton DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1064.
District Court of Appeal of Florida, Fifth District.
April 5, 1990.
Rehearing Denied May 15, 1990.
*1232 Michael J. Snure and David A. Henson of Muller, Kirkconnell, Lindsey and Snure, P.A., Winter Park, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David S. Morgan, Asst. Atty. Gen., Daytona Beach, for appellee.
HARRIS, Judge.
Pursuant to a negotiated drug purchase appellant, at one time and one place on August 25, 1988, handed an undercover agent one piece of crack cocaine.[1] As a result he was charged, convicted of, and sentenced for two statutory offenses: possession of a controlled substance (a third degree felony under section 893.13(1)(f), Florida Statutes (1987)), and delivery of a controlled substance (a second degree felony under section 893.13(1)(a)1, Florida Statutes (1987)).
Appellant argues that his separate convictions and sentences for the crime of possession of one rock of cocaine and for the crime of delivery of that same rock of cocaine violate his right to protection from double jeopardy provided by Article I, § 9, Florida Constitution and the fifth amendment to the United States Constitution in that both crimes are in substance and in legal and constitutional contemplation "the same offense" for which multiple trials, convictions and punishments are constitutionally proscribed. Such reliance on the fifth amendment to the United States Constitution has been rejected by the holding of United States Supreme Court in Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) which was recognized by the Florida Supreme Court in State v. Smith, 547 So.2d 613 (Fla. 1989):
[w]ith respect to cumulative sentences in a single trial, the double jeopardy clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.
The dissenting opinion recognizes that Missouri v. Hunter forecloses relief to appellant based on the United States Constitution but urges that the Florida Supreme Court construe Article I, § 9, Florida Constitution as granting greater protection.
The Florida Supreme Court specifically rejected this construction in State v. Cantrell, 417 So.2d 260 (Fla. 1982) in which it was asked by certified question whether Article I, § 9 of the Florida Constitution should have the same construction as the fifth amendment to the United States Constitution or a more restrictive construction by holding:
[W]e apply and construe article I, section 9 of the Florida Constitution in the same manner that the United States Supreme Court applied the fifth amendment to the United States Constitution in Albernaz v. United States [450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)] ...
The Supreme Court did not recede from the holding, even though urged to do so, in either Carawan v. State, 515 So.2d 161 (Fla. 1987) or State v. Smith, 547 So.2d 613 (Fla. 1989).
What would be the basis for a more restrictive construction of the Florida Constitution? Since the language of the two provisions is almost identical,[2] such interpretation would have to be based on a public policy argument. On the one occasion in recent years in which the citizens of this state had an opportunity to be heard *1233 on the construction of the constitution, they overwhelmingly determined that no greater rights should be granted under Article I, § 12 of the Florida Constitution than under the fourth amendment to the United States Constitution as interpreted by the Supreme Court of the United States.[3] There appears no reason to so liberally construe the Florida Constitution in this case.
Although not specifically raised on appeal, the dissent also urges that the conviction and sentence for possession should be reversed based on legislative intent as expressed in section 775.021(4)(b). To reach this conclusion, however, it must be accepted that one cannot have a sale without a delivery or a delivery without possession; otherwise the lesser offense is not subsumed by the greater offense. The dissenting opinion sets out a "mental game" to construct a hypothetical in which a sale can occur without a delivery or a delivery without possession and concludes "... the point is that if one cannot theorize that A is in possession then one cannot conceptualize how A can accomplish a delivery of possession or a sale".[4]
But consider an actual case, Daudt v. State, 368 So.2d 52 (Fla. 2nd DCA 1979) cert. denied, 376 So.2d 76 (Fla. 1979) in which the court found that a sale was accomplished without possession. In Daudt the defendant was convicted of sale and possession of marijuana. The defendant had, at the request of a prospective buyer (an undercover police officer), made a phone call to his "source" to obtain marijuana. Defendant and the undercover officer then drove to another location where they met "Mike". The defendant assured "Mike" that the money was right and, at Mike's insistence, remained as a lookout while Mike took the officer to the location of the marijuana. The sale went down and the arrest was made.
The Daudt court held:
There is no evidence whatsoever that appellant ever had actual possession or control of the marijuana. Nor was constructive possession established. Although appellant knew of the presence of the marijuana, there is no evidence that it belonged to or was under the control of the appellant. At best, the evidence establishes that appellant brought the parties to the transaction together and expected to be paid for such service.
.....
Appellant aided and abetted [Mike] in selling the marijuana, but not in possessing it. [Mike] already possessed the marijuana; there is no showing that appellant was of any help to [Mike] in either acquiring it or retaining possession of it. On the contrary, appellant aided [Mike] in divesting himself of it.
Daudt at 53-54.
It appears, therefore, that possession of cocaine is not a category three offense as set out in Brown v. State, 206 So.2d 377 (Fla. 1968) to the charged offense of sale or delivery of cocaine because possession is not "an essential ingredient" of the sale or delivery of cocaine.[5] Sale or delivery of cocaine can occur without possession.
In analyzing whether possession is an "essential ingredient" of a sale of cocaine, why does it matter if appellant was charged as an aider or abettor or as the one who actually sold the contraband? In either event he is guilty of the sale, not aiding or abetting in the sale; therefore, one can be guilty of sale whether or not one has had possession. Thus possession, while present in almost all sales, is not an essential ingredient to the crime of sale of contraband. In considering whether something is an essential ingredient of the *1234 charge, the true relationships between the concepts of sale, delivery and possession is unimportant  the issue is can a sale be completed without having possession of the thing sold? If a sale can occur without delivering possession (Gregg Maxey, Inc. v. Bateman, 126 Fla. 747, 171 So. 811, (Fla. 1937) why cannot a sale occur without having possession? Sales are conducted by brokers without possession of the thing sold on a daily basis. Since a sale can occur without possession  through brokers, agents, whatever  then possession cannot be an essential element of sale. We do not agree that the test is whether possession was an "element" under the facts of the case before us (as apparently did the court in Gordon v. State, 528 So.2d 910 (Fla. 2d DCA 1988)) but whether it is a necessary element under the statute. This is consistent with State v. Burton, 555 So.2d 1210 (Fla. 1989) in which the Florida Supreme Court indicates approval of the legislative intent to treat sale and possession of the same substance as separate offenses subject to separate convictions and punishment.
We next must look to the information to see if possession would be a category four offense as defined by Brown. An offense is included within this category when the information charging the greater offense alleges a finding of the commission of the lesser offense. The count of the information charging sale or delivery of cocaine makes no reference to possession. See Portee v. State, 392 So.2d 314 (Fla. 2d DCA 1981) approved, 447 So.2d 219 (Fla. 1984). It appears, therefore, under the present law of this state, that section 775.021(4)(b) is inapplicable because possession is not a lesser included offense of sale or delivery of cocaine.
We acknowledge conflict with V.A.A. v. State, 561 So.2d 314 (Fla. 2d DCA 1990)
AFFIRMED.
PETERSON, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting.
The basic issue is whether as to one instant of time and one quantum of contraband, a defendant can be convicted of both possession and sale or delivery. Decisions in this state can be divided time-wise, into three categories: (1) those decided before Carawan v. State, 515 So.2d 161 (Fla. 1987), (2) those decided after Carawan and before amendment, effective July 1, 1988, of section 775.021(4), Florida Statutes, and (3) those decided after the 1988 amendment to section 775.021(4). This case involves specifically the issue of whether, after the amendment, possession is a necessary lesser included offense of a delivery or sale offense.
I would reverse defendant's conviction for the offense of possession of a controlled substance for several reasons.
(1) CONSTITUTIONAL DOUBLE JEOPARDY  HAS THE ENTIRE "IDENTITY OF OFFENSE" CONCEPT BEEN ABROGATED?
When the question is whether or not any particular two offenses are in substance the "same" within the meaning of the constitutional clauses prohibiting the government from twice placing a citizen in jeopardy for "the same offense" (the "constitutional law  double jeopardy  identity of offense" problem), the legal issue primarily involves a judicial construction and interpretation of the intent and meaning of the constitutional provision. This is true notwithstanding that problem incidentally requires a judicial analysis of technical constituent elements and inquiry into the purpose of each of the two offenses being compared, and the latter inquiry requires a judicial inquiry as to the intent of the legislature in enacting a particular statutory criminal offense.[1] The relevant legislative intent is as to the socially harmful conduct ("evil") which the statutory criminal offense was designed to punish and deter. *1235 The process of deciding whether or not any particular two offenses are the "same" for constitutional purposes is a judicial, not a legislative, function, although a proper judicial analysis of the problem involves a consideration of both the intent of those who proposed the language in the constitution and the intent and purpose of the legislature in enacting each of the two criminal statutes being compared. The controlling intention is that of the framers of the constitutional provision and not the intent of the legislature in passing the criminal statutes because the constitution is a limitation on the legislature as well as the executive and judicial branches of government. Even if the legislature expressly declared that its intent in enacting a particular statute, or statutes, was to cause, or enable the executive branch of government to put, a citizen to be twice placed in jeopardy "for the same offense", both the legislative intent and statute would be unconstitutional. Further, any legislative intent as to the meaning of the constitution is immaterial because under the constitutional separation of powers doctrine, the interpretation of the constitution is an exclusive judicial function which the judiciary should not abrogate in favor of the legislature. If the legislature intends to substitute a statutory enactment (§ 775.021(4), Fla. Stat.) for the constitutional double jeopardy clause, such intent should not be effectuated by the judiciary.
Recent United States Supreme Court cases[2] are widely interpreted as indicating that the U.S. Supreme Court has limited or abdicated its historical role of interpreting the federal double jeopardy clause as a constitutional limitation on the government's authority to place a citizen twice in jeopardy for the same offense by holding (1) that the constitutional limitation against two trials for the same offense does not apply to a single trial setting and (2) that the whole judicial problem of analyzing offenses to determine whether they are in substance and constitutional contemplation "the same offense" or two different offenses (the identity of offense problem) is not one of interpretation of the intent of the framers of the constitution but one of interpretation of the intent of the legislature  not only as to the purpose of each criminal statute  but as to whether the legislative intent was that a citizen could be charged, tried, convicted or punished for two offenses which are substantially "the same offense." If this is a correct view, then the Florida Supreme Court should effectuate the constitutional double jeopardy rights of Florida citizens by continuing to treat the identity of offense problem as one of constitutional interpretation of the Florida Constitution.
During the last decade, the Florida Supreme Court, as well as the District Courts of Appeal, have worked diligently to better understand and apply the constitutional concept that every two criminal offenses are either "the same offense" within the meaning of the constitutional double jeopardy prohibition or they are substantively "different." The judicial inquiry as to the true identity of an offense started with State v. Pinder, 375 So.2d 836 (Fla. 1979), includes leading cases such as Borges v. State, 415 So.2d 1265 (Fla. 1982) and Bell v. State, 437 So.2d 1057 (Fla. 1983) and has apparently concluded with Carawan v. State, 515 So.2d 161 (Fla. 1987). The cases have largely been concerned with a correct application of one analytic test for substantive "difference" which in effect holds that if both of the offenses are based on the same factual event and if each of the two offenses does not have at least one essential constituent element that the other offense does not have, the two offenses are "the same offense" and prosecution for both offenses violates the constitutional double jeopardy provision. This judicial search, from case to case, for a better understanding of the double jeopardy concept, for better methods of analysis, and for a more perfect application of the concept, should continue.
The future looks bleak for a continued judicial recognition that the constitution prohibits a citizen from being placed twice *1236 in jeopardy for "the same offense" whether charged as two counts in one information and one trial, or charged in two or more informations but consolidated for one trial, or charged in different charging documents and tried consecutively in two sequential trials.
The dissent of Justice Barkett in State v. Smith, 547 So.2d 613 (Fla. 1989) may mean that the present majority of the Florida Supreme Court will decline to accept this difficult responsibility.
(2) LEGISLATIVE INTENT  POSSESSION, DELIVERY AND SALE OF CONTRABAND  ONE, TWO, OR THREE OFFENSES?
If, in the present state of the law, the possession charge in this case in not to be reversed on constitutional double jeopardy grounds, then it should be reversed upon the basis of "statutory construction" and "legislative intent."
Basically, section 893.13(1)(f), Florida Statutes, provides that it is unlawful to be in actual or constructive possession of a controlled substance. Sections 893.13(1)(b) and 893.13(1)(g) provide specific penalties for possession of certain amounts of certain controlled substances.
Section 893.13(1)(a) provides that it is unlawful to sell, purchase, manufacture or deliver, or to possess with intent to sell, purchase, manufacture or deliver, controlled substances.
Standard Jury Instructions in Criminal Cases provide definitions of some of the terms used in the statutes:
(1) "Possess" means to have personal charge of, or to exercise the right of ownership, management or control over, the thing possessed. [The instruction goes on to differentiate and to define the legal concepts of actual and constructive possession.]
(2) "Deliver" or "delivery" means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship. [This is also the statutory definition in section 893.02(5), Florida Statutes.]
(3) "Sell" means to transfer or deliver something to another person in exchange for money or something of value or a promise of money or something of value.
Every time a person is in possession of a controlled substance (or any other tangible personalty) that possession may either continue in the possessor or it may terminate. Termination of possession can occur in only a limited number of ways: the termination of possession can be involuntary, such as when the possessor unintentionally loses the object or when another person takes possession by theft, robbery or confiscation. The termination of possession may be voluntary as when the possessor consumes the object possessed, or the possessor abandons possession or when the possessor engages in a transaction and intentionally transfers or delivers possession to another person. A voluntary intentional delivery or transfer of possession commonly occurs in three circumstances:
(a) when the possessor delivers possession for the purpose of a bailment such as when a principal, as bailor, delivers possession to an agent, as bailee, for some purpose.
(b) when the possessor transfers possession in order to make a gift of the possessed object, and
(c) when the possessor delivers possession to a recipient in exchange for something of value (in law called "consideration.") This last type of delivery is, of course, a sale.
Possession means to exercise such a controlling dominion over an object as permits the possessor to use or consume the object or transfer possession to another person. Possession means having power and control over an object and having an intent to exercise that power. Constructive possession is merely knowing of the existence of an object and having, and intending to exercise, the power to obtain actual physical possession of the object. Delivery is a transaction in which a person with possession of an object transfers that possession to another person. Delivery is variously defined as a change of possession or the act by which the res is placed within the *1237 actual or constructive possession or control of another. Sale is a transaction in which a possessor of an object, as seller, transfers that possession to another person, as purchaser or buyer, for a consideration; it is a delivery for a consideration. One can be in possession without making a delivery and one can make a delivery without a sale but one cannot make a delivery without having the controlling dominion (possession) necessary to make a delivery and one cannot make a sale without making a delivery, actual or constructive, of possession of the object sold.
As a practical matter and in correct legal contemplation of the essence of the terms and concepts, as to a single factual event (single act) involving one quantum of contraband, the offense of delivery is the offense of possession plus the element of a transfer of possession and the offense of a "sale" is the offense of "delivery" plus the element of consideration.
It is an enticing mental game to construct hypotheticals[3] to argue that a sale can occur without a delivery or a delivery can occur without a possession. This is best done by using factual scenarios that obscure (a) the true nature of transactions, (b) the legal concept of constructive possession, or (c) a crime committed by several persons as co-perpetrators or in various agency relationships, in order to confuse an analysis of the elements of sale, delivery and possession and the true relationships between the concepts. The majority opinion's citation of Daudt v. State, 368 So.2d 52 (Fla. 2d DCA 1979) is an example. Daudt was convicted of both sale and possession but on appeal his conviction of sale was upheld, but his conviction of possession was reversed. This was because Daudt was charged not as the actual perpetrator of the two crimes but only as an aider and abettor under section 777.011, Florida Statutes, which statute provides that a person who aides, abets or procures another person to commit a criminal offense can be convicted of that offense whether he is or is not present at the commission of that offense. Mike, the actual perpetrator, possessed marijuana and sold (delivered possession for a consideration) some of it. While the evidence showed that Daudt helped (aided and abetted) Mike in the sale, there was no evidence that Daudt helped Mike acquire or keep possession, so it was held that, under the aider and abettor statute, Daudt could be convicted only for the sale but not the possession. An aider and abettor does not have to personally commit any element of an offense in order to be guilty; he only needs to help or encourage another person commit an offense. Mike, the actual perpetrator, had the possession that was essential to the sale. Daudt v. State does not demonstrate that a sale can exist without possession of the object sold.
Of course, delivery and sale are usual "event" crimes that finally occur at a single moment of time while possession is a continuing offense. This causes a peculiar analytical problem. Almost all who sell or deliver drugs possess them for some period of time before the sale or delivery event and most who purchase drugs possess them for some period of time after the sale event. Therefore, conceivably, a possession charge could be carefully drafted to *1238 relate to a possession occurring before or after the sale event or before the delivery event[4] but there is no indication that the legislature contemplated this situation. Therefore, a separate charge of possession at a distinctly different time from a delivery or sale could, by careful drafting of a charging document, be differentiated from either event crime.
In section 775.021(4)(b), the legislature has explained that in section 775.021(4)(a), the legislature has intended to adopt a "rule of construction" so as to cause a defendant to be convicted and sentenced for each separate criminal offense although committed by a single act (and apparently in disregard of the fact that two such offenses may constitute "the same offense" within the meaning of that phrase in the constitutional double jeopardy clause.) However, the legislature has expressly provided three exceptions to its rule of construction. The third exception (§ 775.021(4)(b)3.) is:
Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
This statutory exception appears to have been intended to describe what has heretofore been the criminal law concept of "necessarily included lesser offenses"[5] as that concept was originally explained in Brown v. State, 206 So.2d 377 (Fla. 1968) (category 3) and listed as a category 1 in a Schedule of Lesser Included Offenses adopted by the Florida Supreme Court as part of the Standard Jury Instructions in Criminal Cases[6] and referred to in Florida Rule of Criminal Procedure 3.510(b). As "possession" is a separate offense, all of the statutory elements of which are included within (subsumed by) the greater offense of "delivery," and as "delivery" is a separate offense, all of the statutory elements of which are included within ("subsumed by") the greater offense of "selling," it would appear from the amendment of section 775.021(4) by Ch. 88-131, § 7, Laws of Florida, that the legislature does not intend the sale or delivery of a controlled substance and the possession of that substance be treated as separate offenses subject to separate convictions and separate punishments.[7]
The majority opinion relies on State v. Smith, 547 So.2d 613 (Fla. 1989), as authority for affirming. The only holding with stare decisis authority in that case was that the 1988 amendment to section 775.021(4), Florida Statutes, [widely acclaimed to have been enacted in order to reverse Carawan v. State] did not apply retroactively to the offenses in those cases which had occurred prior to the effect of the amendment. However, the court by way of dicta went on to state that by the amendment, inapplicable to the case before the court, the legislature intended that the offense of delivery and the offense of possession be separate offenses subject to separate convictions and sentences. It is unfortunate the court did not withhold its consideration of the effect of the amendment on any particular criminal charges *1239 until it had before it a case to which the amendment was applicable. This is such a case.
Cases directly in point are V.A.A. v. State, 561 So.2d 314 (Fla. 2d DCA 1990) and State v. McCloud, 15 F.L.W. D723, 1990 WL 27954 (Fla. 2d DCA Mar. 14, 1990), in which the Second District relying on its decision in Gordon v. State, 528 So.2d 910 (Fla. 2d DCA 1988), approved sub nom State v. Smith, 547 So.2d 613 (Fla. 1989), held that as to crimes occurring after July 1, 1988, (the effective date of section 775.021, Florida Statutes (1988)), the legislature did not intend separate convictions for both the offense of possession and the offense of sale as to the same quantum of contraband. In Gordon v. State, after recognizing that the case of Daudt v. State turned on Daudt's status as an aider and abettor of the actual possessor and seller, the court reasoned to the conclusion that the first element of the crime of sale of contraband is possession.
This court should follow Gordon v. State, V.A.A. v. State, and State v. McCloud and reverse the possession offense in this case.
NOTES
[1] Neither Roberts v. State, 557 So.2d 685 (Fla. 5th DCA 1990) nor McKinney v. State, 559 So.2d 621 (Fla. 3d DCA 1990) are applicable to this case because those offenses occurred prior to the effective date of the amendment to section 775.021(4) Florida Statutes.
[2] Fifth Amendment, United States Constitution: "... nor shall any person be subject for the same offense to be twice put in jeopardy"; Article I, § 9, Florida Constitution: "... or be twice put in jeopardy for the same offense ..."
[3] 1982 amendment to Article I, § 12 of the Florida Constitution. This appears to have been in response to Odom v. State, 403 So.2d 936 (Fla. 1981) in which the Supreme Court suppressed evidence obtained in violation of Article I, § 12 even though it would have been admissible under the United States Supreme Court interpretation of the fourth amendment.
[4] Dissenting opinion n. 3.
[5] Just as clearly it is not a category one offense (crime divisible into degrees) nor a catagory two offense (attempt to commit offenses) under Brown.
[1] The intent and purpose of the legislature are immaterial to a judicial inquiry as to the elements and purpose of a common law crime.
[2] Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); Ohio v. Johnson, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).
[3] An example: X hides a cache of controlled substances in the woods. A learns the location of the cache and, knowing that B desires possession, A, for a legal consideration (i.e., a benefit to A or a detriment to B), gives B information as to the location of the cache. By use of the information from A, B takes actual possession of the cache. A can argue that A's mere knowledge of the location of the cache did not constitute possession and that A did not deliver the drugs to B and at most, A only sold B information which is not a crime. The State can argue that under these circumstances, A's knowledge of location also carried with it the power of access and the power to control (because all one needed to acquire possession and control was knowledge of location). Therefore, when A gave that power to B for the purpose of obtaining possession, A went beyond mere knowledge and took personal charge over the cache and exercised such a power to possess and control as constitutes legal constructive possession and that A's act was effective to accomplish a delivery of possession for a consideration which constituted a sale. The point is not whether or not A's act constitutes the exercise of such dominion and control as constitutes possession; the point is that if one cannot theorize that A is in possession then one cannot conceptualize how A can accomplish a delivery of possession or a sale.
[4] Query: Why does section 893.13(1)(a) provide punishment more severe than for mere possession for one who purchases from one who sells but not for one who "receives" from one who delivers?
[5] Lesser in the correct theoretical sense that all the elements of the crime of possession are included within the essential elements the greater offense of delivery, not merely lesser in the result sense that possession, a third degree felony, is subject to a lesser statutory maximum punishment than delivery, a second degree felony.
[6] See Order and Opinion of the Florida Supreme Court filed April 16, 1981, adopting Florida Standard Jury Instructions in Criminal Cases (Florida Supreme Court case numbers 57,735 and 58,799). See also order of the Supreme Court of Florida dated September 24, 1981, 403 So.2d 979 (Supreme Court case number 58,988-A).
[7] This is exactly the same result that should have been reached by constitutional double jeopardy analysis prior to Carawan and also under the rationale in Carawan without propping up the double jeopardy analysis in Carawan by alluding to the rule of lenity in criminal cases codified by the legislature in section 775.021(1), Florida Statutes, and without attempting to synthesize the double jeopardy analysis in Carawan with the federal view of "legislative intent" as set forth in Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).