**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 31 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

vs.

WILLIAM OXX, JONATHAN OXX,
MARTIN TILLY, CHRISTOPHER
BERKE, DAVID KATZ, STEVE
MULHOLLAND, JOHN M.
HENDERSON, AARON M.
BRENNAN, AND MICHAEL
KVALE,

      Defendants-Appellees.

No. 96-4173

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 96-CR-077 J)

---

Lisa E. Jones, Department of Justice, Washington, D.C. (Lois Schiffer, Assistant
Attorney General, Washington, D.C., Scott M. Matheson, Jr., United States
Attorney, Wayne Dance, Assistant United States Attorney, Salt Lake City, Utah,
and M. Alice Thurston, Department of Justice, Washington, D.C. with her on the
brief, and Kevin Jones, Department of the Interior, Salt Lake City, Utah, of
counsel), for Plaintiff-Appellant.

Fred M. Morelli, Jr., Aurora, Illinois, for Defendants-Appellees.

---

Before KELLY, HOLLOWAY, and HENRY, Circuit Judges.

---

KELLY, Circuit Judge.

The government appeals from an order dismissing a petty offense information charging Defendants-Appellees with the delivery of persons by parachute in a national park without a permit and not in an emergency, in violation of 36 C.F.R. § 2.17(a)(3) (1996). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3731. We reverse.

Background

Defendants are BASE jumpers. "BASE" is an acronym for buildings, antennae, spans, and earth forms; when a person has completed a jump from each structure he can be certified as a BASE jumper. Defendants' charges stem from jumps during the week of April 28 to May 3, 1995, when they jumped from cliffs on the Utah side of the Glen Canyon National Recreation Area. After a brief free-fall they deployed parachutes, and all but one landed safely on the surface of Lake Powell.

The district court dismissed the information because of what it considered incurable ambiguity in the governing regulations. Its rationale was that defendants' BASE-jumping parachutes were somewhat similar to non-powered aircraft, which are allowed on Lake Powell under 36 C.F.R. § 2.17(a)(1) and § 7.70(a)(6) (1996). The court ruled that these provisions conflicted with a

- 2 -

phrase in §2.17(a)(3) which prohibits delivery of a person by "other airborne means" without a permit. That phrase, the court said, clearly prohibits landing a plane on Lake Powell, in contradiction of the provisions allowing it. Under these circumstances the district court held the regulations did not adequately notify the average person what conduct was prohibited, and the rule of lenity required the incurably ambiguous regulations to be construed in favor of the defendants. On appeal the government argues that the applicable regulation suffers from no ambiguity and is clear enough on its face to give defendants notice that their conduct was prohibited.

## Discussion

Although we generally review the dismissal of an indictment or information for abuse of discretion, we review de novo a dismissal based on the district court's interpretation of the governing law. See United States v. Wood, 6 F.3d 692, 694 (10th Cir. 1993).

As with any question of interpretation, we begin with the plain language of the regulation, which "must ordinarily be regarded as conclusive." Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). Section 2.17(a)(3) provides: "(a) The following are prohibited: . . . (3) Delivering or retrieving a person or object by parachute, helicopter, or other airborne means,

- 3 -

except in emergencies involving public safety or serious property loss, or pursuant to the terms and conditions of a permit." 36 C.F.R. § 2.17(a)(3) (1996).

Defendants argue, first, that their conduct cannot be regulated under § 2.17(a)(3) because their parachutes provided the kind of control characteristic of non-powered aircraft, which are permitted under § 2.17(a)(1). The district court, although not finding that defendants' parachutes were "aircraft," agreed that BASE-jumping parachutes "provide a BASE jumper with control akin to horizontal flight that enables the jumper effectively to steer clear of the structure leapt from and to guide the parachute to a safe landing area." Aplt. App. at 22. Thus defendants argue that their activity is covered by § 2.17(a)(1), which prohibits operation of aircraft except at places designated by special regulations. The surface of Lake Powell is such a designated landing area. See 36 C.F.R. § 7.70(a)(6) (1996). Accordingly the defendants assert that because their BASE-jumping parachutes are really non-powered aircraft, and such aircraft are permitted on Lake Powell, they have not violated the regulation. This argument, of course, turns on whether the defendants' BASE-jumping devices are non-powered aircraft or are parachutes within the meaning of § 2.17(a)(3).

Second, defendants argue that the regulatory prohibition of "delivering" a person is too ambiguous to cover their conduct.

Third, they argue that even if "delivery" unambiguously applies to their

conduct, a conflict exists between § 2.17(a)(3), which prohibits delivery of a person by "other airborne means" without a permit, and §§ 2.17(a)(1) and 7.70(a)(6), which allow aircraft on Lake Powell. This ambiguity, they argue, deprived them of adequate notice that their conduct was prohibited.

We turn first to the primary issue on appeal: are defendants' BASE-jumping parachutes included within the meaning of "parachute" in § 2.17(a)(3)? Federal regulations define a parachute as "a device used or intended to be used to retard the fall of a body or object through the air." 14 C.F.R. § 1.1 (1997). The parachutes at issue here do exactly that. Technological improvements in the shape, maneuverability, and control of modern parachutes, including those used here, do not make them cease to be parachutes. Defendants uniformly referred to their BASE-jumping apparatus as a "parachute" even while protesting it was something else, see Aplees. Brief at 4, 6, 7, 8, until oral argument, when they began calling the parachute an airfoil. The district court noted in its memorandum opinion that "BASE jumping does involve the use of a parachute." Aplt. App. at 19. We conclude that the term "parachute" in § 2.17(a)(3) unambiguously applies to the parachutes used by defendants in BASE jumping.

Defendants assert that the word "delivering," in the phrase "delivering . . . a person . . . by parachute," is too ambiguous to cover BASE jumping. 36 C.F.R. § 2.17(a)(3) (1996). "Delivering" is not defined in the regulations, but we believe

it is apparent that moving oneself from one area to another, as defendants did, constitutes delivery. As applied to their conduct, then, "delivering" is unambiguous.

Defendants also argue that a facial conflict exists between § 2.17(a)(3), which prohibits delivery by "other airborne means" without a permit, and §§ 2.17(a)(1) and 7.70(a)(6), which permit operation of powerless aircraft on Lake Powell. We need not address this supposed ambiguity because the information charged delivery by parachute, not by "other airborne means." See Aplt. App. at 1-2. And it charged a violation only of § 2.17(a)(3), neither mentioning nor charging a violation of any other statute or regulation. Because we have held that the term "parachute" in § 2.17(a)(3) unambiguously applied to defendant's conduct, any ambiguity in the regulation of powerless flight is irrelevant. Nevertheless, to answer the contention that what is forbidden in § 2.17(a)(3) is simultaneously allowed elsewhere, we note that § 2.17(a)(3) only prohibits airborne delivery without a permit. When read together, so that each provision has meaning, there is no more conflict between the regulations than there is between one rule that allows a person to drive a car on the roads and another that requires her to have a permit to do so. The rule of lenity may not be invoked to manufacture ambiguity. See Albernaz v. United States, 450 U.S. 333, 342 (1981) ("Where Congress has manifested its intention, we may not

manufacture ambiguity in order to defeat that intent.") (quoting Bifulco v. United States, 447 U.S. 381, 387 (1980).

Because there is no ambiguity in the language of the regulation, defendants had adequate notice of the illegality of their conduct. Since "parachute" and "delivering" clearly applied to the defendants' activity, we conclude the regulation "made it reasonably clear at the relevant time that the defendant's conduct was criminal." United States v. Lanier, 117 S. Ct. 1219, 1225 (1997).

In the absence of ambiguity, the rule of lenity—or strict construction—may not be applied. See Moskal v. United States, 498 U.S. 103, 108 (1990) (stating that the rule of lenity should be applied only if, "[a]fter 'seiz[ing] everything from which aid can be derived,'" the statute is still ambiguous) (quoting United States v. Bass, 404 U.S. 336, 347 (1971) (quoting United States v. Fisher, 6 U.S. (2 Cranch) 214, 230 (1805) (Marshall, C.J.))); Albernaz, 450 U.S. at 342-43; see also United States v. Wilson, 10 F.3d 734, 736 (10th Cir. 1993) (holding that the rule of lenity "is not applicable unless 'there is a grievous ambiguity or uncertainty in the language'") (quoting Chapman v. United States, 500 U.S. 453, 463 (1991)).

As a last resort, Defendants attempted at oral argument to bring their conduct within the regulatory exception for emergencies. They suggested that whenever a person jumps off a cliff he is in an emergency and may deliver

himself by parachute without a permit. That argument, of course, will not fly. A parachute by any other name is still a parachute, and delivering a person by parachute is prohibited. As the intent of the regulation is abundantly clear, "nothing is left to construction." <u>United States v. Fisher</u>, 6 U.S. (2 Cranch) at 230.

REVERSED.