**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-5037**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JONATHAN WAYNE KEESEE,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, District Judge.  (1:10-cr-00047-JPJ-PMS-1)

———————

Submitted:  June 11, 2012      Decided:  December 5, 2012

———————

Before GREGORY, DAVIS, and DIAZ, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Larry W. Shelton, Federal Public Defender, Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Appellant.  Timothy J. Heaphy, United States Attorney, Jean B. Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jonathan Keesee appeals his convictions and 90-month-plus-one-day sentence imposed following his guilty plea to offenses involving the manufacturing of methamphetamine. Keesee contends that the district court clearly erred in finding that his manufacturing of methamphetamine created a substantial risk of harm to the life of a minor and that his sentences for both manufacturing methamphetamine, 21 U.S.C. § 841(a)(1) (2006), and manufacturing or attempting to manufacture methamphetamine in a manner that creates a substantial risk of harm to human life, 21 U.S.C. § 858 (2006), violate the Double Jeopardy Clause. Keesee also contends that the district court abused its discretion in imposing its sentence. The parties were directed to submit supplemental briefing regarding whether application of the risk of harm enhancement of USSG § 2D1.10(b)(1)(B),[*] in addition to the consecutive sentence imposed pursuant to 21 U.S.C. § 860a (2006), results in improper double counting. We affirm.

Keesee pled guilty to four of five counts in an indictment that charged him with conspiracy to manufacture methamphetamine, manufacture of methamphetamine, creating a substantial risk of harm to human life while manufacturing

---

[*] U.S. Sentencing Guidelines Manual, § 2D1.10(b)(1)(B) (2010).

methamphetamine, and the manufacture, distribution, and possession with intent to manufacture and distribute methamphetamine on premises in which an individual under the age of 18 years was present and resided.

At sentencing, Keesee objected to the recommended enhancement to his sentence under USSG § 2D1.10(b)(1)(B) for manufacturing methamphetamine in a manner that created a substantial risk of harm to the life of a minor. He asserted that the methamphetamine lab was small, produced only eight grams of methamphetamine, and that the minor children who lived in the house were removed during the gassing phase of the manufacturing. He presented the testimony of a chemist who testified concerning the method of manufacturing used by Keesee, and opined that there was insufficient evidence to support a finding of a substantial risk of harm to the minors.

After hearing evidence on the risk of harm issue, the court determined that the Government had proven by a preponderance of the evidence, that the "children, that is minors, were residents of the home and present in the home during the so-called cooking or cook process of the manufacture of methamphetamine at the time." The court found the Government's evidence more persuasive as to whether there was a substantial risk of harm to the minors, and applied the enhancement.

The court rejected Keesee's request for a below-Guidelines sentence, finding that a within-Guidelines sentence reflected the seriousness of the offense and its consideration of the sentencing factors. The court sentenced Keesee to 78 months of imprisonment on the conspiracy and the manufacturing charges, and a consecutive sentence of 12 months and one day on the manufacturing while creating a substantial risk of harm to a minor charge, for a total sentence of 90 months and one day.

Keesee first challenges the district court's factual finding that his method of manufacturing methamphetamine created a substantial risk of harm to the life of a minor, warranting the increased offense level under USSG § 2D1.10(b)(1)(B). In determining whether this enhancement applies, courts may consider: (1) the quantity of chemicals found at the lab and the manner of storage; (2) the manner in which the hazardous substances were disposed of and the likelihood of release into the environment; (3) the duration of the offense and the extent of the manufacturing; and (4) the location of the lab and how many people were placed at substantial risk of harm. USSG § 2D1.10 cmt. n.1; United States v. Simpson, 334 F.3d 453 (5th Cir. 2003).

Keesee contends that the court failed to consider all the factors and that the Government's evidence was inconsistent and insufficient to support the enhancement. The district court

4

found that the facts presented at trial indicated that the minors were residents of the home and were present during the cooking process, but not during the gassing stage of the manufacture. The court further credited the Government's expert and found that there was a substantial risk of fire based on the manner of manufacturing methamphetamine used by Keesee. Addressing the factors to consider in determining the amount of risk, the court focused on the risk of fire during the manufacturing, and the location of the methamphetamine lab in the basement of the home, directly under the rooms in which the minor children slept.

Keesee presented evidence that his one-pot method of cooking methamphetamine used Coleman fuel, which was less flammable than the other three starter fluids that could be used. He also presented evidence that the use of less water decreased the hazardousness of the cooking process because, as the Government's chemist testified, "the more water, typically the more reactive the lithium will be." However, there was no evidence that Keesee actually used less water than was used in the Government's experiments in which one of the twelve failed experiments resulted in fire when using Coleman fuel. As the district court noted, Keesee's expert did not testify that there was not a substantial risk of harm; rather, he testified that he

could not state that there existed a substantial risk to human life based on Keesee's manufacturing process.

The Government presented evidence that in controlled experiments conducted by the Drug Enforcement Administration, Coleman fuel resulted in bottle failure upon the reaction of water and lithium, which then caused the "contents [of the bottle], including the flammable Coleman fuel, to be ejected and igniting the surroundings." This testimony established that the methamphetamine manufacturing method used by Keesee created a risk of fire. Further, although there was no actual fire during the two times that Keesee cooked methamphetamine, this does not mean that there was not a risk. See United States v. Bivens, 129 Fed. App'x 159, 165 (6th Cir. 2005) ("The guidelines do not require the sentencing court to find that the . . . children were *actually harmed* by the . . . production of methamphetamine, . . . only that their lives were placed at substantial risk."). As the district court stated, "the likelihood of substantial harm to minors who lived there through a fire occurring at the home would still exist even if it had not occurred in the past." See United States v. Layne, 324 F.3d 464, 470-71 (6th Cir. 2003) (explaining that enhancement for substantial risk of harm to minors was "designed to address the inherent dangers of methamphetamine manufacturing"). We conclude that the enhancement was supported by the evidence, and therefore not

clearly erroneous.  See United States v. Carter, 601 F.3d 252, 254 (4th Cir. 2010) (providing standard).

Keesee next argues that his conviction for both manufacturing methamphetamine and manufacturing methamphetamine in a manner that creates a substantial risk to human life violates the Double Jeopardy Clause because the latter offense includes all of the elements of the former.  He argues that the crime of manufacturing methamphetamine is a lesser included offense of the crime of manufacturing methamphetamine in a manner that creates a substantial risk of harm to human life.

The Double Jeopardy Clause of the Fifth Amendment protects criminal defendants from repeated prosecutions for the same offense, Oregon v. Kennedy, 456 U.S. 667, 671 (1982), and from multiple punishments for the same offense.  United States v. Martin, 523 F.3d 281, 290 (4th Cir. 2008).  A defendant may be convicted of two separate offenses arising from a single act if each charge requires proof of a fact not essential to the other.  United States v. Dixon, 509 U.S. 688, 696 (1993).

In Blockburger v. United States, 284 U.S. 299, 304 (1932), the Supreme Court held that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires

7

proof of a fact which the other does not." <u>Albernaz v. United States</u>, 450 U.S. 333, 333 (1981). Here, the manufacturing count, 21 U.S.C. § 841(a)(1), proscribes the manufacturing, distribution, dispensing, or possession with intent to manufacture, distribute or dispense a controlled substance. <u>Id.</u> Section 858 penalizes a person who, "while manufacturing a controlled substance [ ] or attempting to do so, or transporting or causing to be transported materials, including chemicals, to do so, creates a substantial risk of harm to human life." 21 U.S.C. § 858.

Each of these statutes requires proof of an element that the other does not. Section 858 requires that the conduct "create[] a substantial risk of harm to human life." Section 841 requires that the person actually manufacture, distribute, dispense, or possess a controlled substance. We conclude, therefore, that the offenses are two separate crimes, and not a crime and a lesser included offense. <u>See</u> <u>Albernaz</u>, 450 U.S. at 333; <u>Blockburger</u>, 284 U.S. at 304.

Moreover, we note that 21 U.S.C. § 841(a)(1), the purported "lesser" offense, carries a greater penalty than the purportedly "greater" offense, 21 U.S.C. § 858. <u>Compare</u> 21 U.S.C. § 841(b)(1)(A)-(C) (providing for maximum sentences of twenty years to life imprisonment, depending on the drug

quantity), <u>with</u> 21 U.S.C. § 858 (providing a maximum sentence of ten years).

Additionally, § 858 applies only to a person who, "while manufacturing a controlled substance in violation of this subchapter, or attempting to do so . . . creates a substantial risk of harm to human life" and provides for a sentence of up to ten years. Because it is necessary to have violated another statute in "this subchapter" in order to be convicted of violating § 858, we conclude that Congress intended for additional and cumulative punishment for these two offenses, <u>see</u> <u>Missouri v. Hunter</u>, 459 U.S. 359, 367 (1983); <u>Albernaz</u>, 450 U.S. at 341 (explaining that it is presumed that Congress legislates with an awareness of other statutes and an awareness of the <u>Blockburger</u> rule), and therefore find no Double Jeopardy violation.

Finally, Keesee also contends that the district court abused its discretion in sentencing him to a total term of 90 months and one day, the middle of the applicable Guidelines range, after stating that a sentence "at the lower end of th[e 78 to 97 month] range" was appropriate. As to this issue, Keesee argues that the court failed to consider Application Note 22 to USSG § 2D1.1, which requires the court, when imposing a consecutive sentence pursuant to 21 U.S.C. § 860a, to determine the "'total punishment' and divide the sentence on the judgment

9

form between the sentence attributable to the underlying drug conduct and the sentence attributable to 21 U.S.C. § 860a." USSG § 2D1.1 cmt. n.22; see United States v. Green, 436 F.3d 449, 459-60 (4th Cir. 2006). He contends that his sentence should be vacated and his case remanded for resentencing.

We review a sentence under a deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). This court may presume that a sentence within the properly calculated Guidelines range is reasonable. Rita v. United States, 551 U.S. 338, 351 (2007). Section 3553(a) provides that, in addition to considering the standard sentencing factors, the court must consider the sentencing range for the offenses of conviction and also "any pertinent policy statement issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(4), (5).

The district court found that a sentence within the calculated 78 to 97 month Guidelines range was appropriate in light of the seriousness of the offense, the dangerousness of manufacturing methamphetamine, and the need for deterrence. The district court also acknowledged that it was required to impose a consecutive sentence for the § 860a charge.

In imposing sentence, the court, in accordance with the directive in Application Note 22, stated that the total sentence was to be 90 months and one day. The court then broke

that sentence down into the 78-month term for the drug charge and the consecutive 12-month-plus-one-day term for the endangerment offense. Although the court had previously noted that a sentence at the low end of the Guidelines range was appropriate, the government argues that this statement might well have been in reference to the sentence for the underlying drug charges, for which the court sentenced Keesee at the bottom of the advisory Guideline range. In any event, the district court's statement is, at best for Keesee's position, ambiguous. Given the presumption of reasonableness accorded within-Guidelines sentences like the one at issue here, we find Keesee's reliance on an ambiguous phrase plucked from a full sentencing proceeding insufficient to warrant relief.

After reviewing the supplemental briefs, we conclude that there was no reversible error in the application of both the risk of harm enhancement and the consecutive sentence under § 860a. "The Sentencing Commission plainly understands the concept of double counting, and expressly forbids it where it is not intended." United States v. Williams, 954 F.2d 204, 208 (4th Cir. 1992). Thus, it is presumed that "double counting is proper where not expressly prohibited by the Guidelines." United States v. Hampton, 628 F.3d 654, 664 (4th Cir. 2010).

Applying the greatest applicable enhancement for Keesee's specific offense characteristics related to the drug

offenses results in an increase in Keesee's offense level to level 30, based on the fact that his manufacturing of methamphetamine created a substantial risk of harm to the life of a minor. USSG § 2D1.1(b)(10)(D). Nowhere do the Guidelines prohibit the application of the § 2D1.1(b)(10)(D) enhancement for risk of loss in combination with the consecutive sentence imposed pursuant to 21 U.S.C. § 860a.

Moreover, the consecutive sentence imposed under § 860a did not result in a greater sentence. Rather, as directed in Application Note 22, the court first determined the total sentence for all of Keesee's convictions, and then divided that sentence between the drug charge (78 months) and the consecutive term under § 860a (12 months plus one day). See USSG § 2D1.1 cmt. n.22; Green, 436 F.3d at 459-60. We conclude that there was no plain error by the district court in applying both the risk of harm enhancement and the consecutive sentence. See United States v. Olano, 507 U.S. 725, 732-37 (1993) (providing standard).

Accordingly, we affirm Keesee's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

12