DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANTHONY COREY ALEXANDER, JR.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-0686

[July 23, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jeffrey D. Gillen, Judge; L.T. Case No. 50-2020-CF-003153-AXXXMB.

Daniel Eisinger, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Deborah Koenig, Senior Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Convicted of one count sexual battery, one count of unlawful sexual activity with a minor, and other crimes, appellant contends on appeal that the trial court fundamentally erred in instructing the jury based upon definitions not contained in the statutes describing the sexual offenses. Considering the totality of the circumstances, we hold the instruction for sexual battery did not constitute fundamental error, but the instruction for unlawful sexual activity with a minor did constitute fundamental error. We therefore affirm the conviction for sexual battery but reverse the conviction for unlawful sexual activity with a minor.

The State charged appellant by amended information with five counts for crimes all alleged to have occurred on April 8, 2020: Count I for sexual battery on a minor between the ages of twelve and seventeen, based on vaginal penetration with his penis; Count II for sexual battery on a minor between the ages of twelve and seventeen, based on vaginal penetration with his fingers; Count III for sexual battery on a minor between the ages of twelve and seventeen, based on vaginal union or penetration with his

mouth; Count IV for unlawful sexual activity with a minor, based on oral, anal or vaginal union or penetration; and Count V for false imprisonment. The alleged victim, V.C., was a sixteen-year-old girl, and appellant was forty-eight years old. Appellant's theory of defense was that he never had any sexual contact with V.C., and she was lying.

At trial, V.C. testified that appellant was the maintenance worker at her apartment complex, and someone whom she knew sold marijuana. On the date in question, V.C. came to appellant's house to obtain some marijuana. Appellant told her to step inside away from security cameras. Once inside, appellant took V.C. to his bedroom and locked the door. Over V.C.'s protests and attempts to stop him, appellant pushed her pants down and began performing oral sex on her. V.C. testified that "he gave me head." When asked what that meant, she stated "Basically licking my vagina with his tongue." At the same time, he penetrated her vagina with his fingers. She testified that he continued by penetrating her vagina with his penis, but she did not know whether he ejaculated inside her. She then got up, wiped herself off, and left.

Later the same day, she told her mother about the incident and her mother reported it to the police. V.C. underwent a medical examination where the examiners obtained vaginal swabs. The examining doctor did not observe any injuries to V.C. but noted that it was common not to find injuries. A forensic biologist tested the swabs for male DNA, which was detected. Testing of the DNA mixture from V.C.'s genital and rectal swabs, as well as oral standards from V.C. and appellant, revealed that it was three decillion times more likely that the DNA was from V.C. and appellant than from V.C. and any unknown individual.

While V.C. was at the examining facility, officers administered a controlled call between V.C. and appellant. The call was introduced into evidence. The State played the controlled call for the jury. During the call, appellant repeatedly acknowledged that V.C. and her mother could have him imprisoned but did not outright reference any sexual activity. V.C. repeatedly asked him to apologize for "having sex with [her]," and appellant apologized but did not expressly admit to the allegations.

After the court denied appellant's motion for judgment of acquittal, the parties discussed jury instructions, and appellant did not object to the instructions given.

As to Count I (sexual battery–penile penetration), the jury was instructed:

To prove the crime of sexual battery, the State must move the following four elements beyond a reasonable doubt. Anthony Corey Alexander, Jr., committed an act upon or with V.C. in which the sexual organ of Anthony Corey Alexander, Jr., penetrated or had union with the female genitals of V.C. Anthony Corey Alexander Jr.'s, act was committed without the consent of V.C . . . .

. . .

Union means contact.

Female genitals includes labia minora, labia majora, clitoris, vulva, hymen, and vagina.

As to Count II (sexual battery–digital penetration), the jury was instructed:

To prove the crime of sexual battery, the State must prove the following four elements beyond a reasonable doubt. Anthony Corey Alexander committed an act upon or with V.C. in which the female genitals of V.C. were penetrated by an object. Elements 2, 3, and 4, have been previously stated under Count 1.

The definition of an object includes a finger. All other applicable definitions have been previously defined under Count 1.

As to Count III (sexual battery–oral union or penetration), the jury was instructed:

To prove the crime of sexual battery, the State must prove the following four elements beyond a reasonable doubt. Anthony Corey Alexander, Jr., committed an act upon or with V.C., in which the mouth of Anthony Corey Alexander, Jr., penetrated or had union with the female genitals of V.C. Elements 2, 3, and 4, have been previously stated under Count 1. All applicable definitions have been previously defined under Count 1.

For Counts I–III, the trial court also gave a lesser included instruction for battery.

For Count IV (unlawful sexual activity with a minor), the jury was instructed:

> To prove the crime of unlawful sexual activity with certain minors, the State must prove the following three elements beyond a reasonable doubt. Anthony Corey Alexander, Jr. engaged in sexual activity with V.C. At the time, Anthony Corey Alexander, Jr. was 24 years of age or older. At the time, V.C. was 16 or 17 years of age.
>
> . . .
>
> Sexual activity means oral, anal, or female genital penetration by, or union with the sexual organ of another, or the anal or female genital penetration of another by any object. Female genitals includes the labia minora, the labia majora, clitoris, vulva, hymen and vagina.
>
> Union means contact.
>
> The definition of an object includes a finger . . . .

For Counts I–III, the jury was also instructed that if it found appellant guilty of the charged count, it must determine whether appellant's penis, finger, or mouth, respectively, had "penetrate[d] the female genitals of V.C." A special interrogatory was included on each charge to determine whether penetration had occurred. For Count IV, the special interrogatory asked whether appellant's "sexual organ or finger," and notably not his mouth, had penetrated the female genitals of V.C.

During closing argument, the State noted the jury would consider a separate count for each specific act. The prosecutor examined the evidence to show that appellant did the acts without V.C.'s consent. The prosecutor argued that even if the jury found V.C. had consented, Count IV did not require consent, and the jury must find him guilty of that offense. The defense attacked V.C.'s version of events and contended that V.C. was lying.

After deliberations, the jury found appellant not guilty of Count I (sexual battery–penile penetration) and found him guilty of the lesser-included charge of simple battery for Count II (sexual battery–digital penetration). The jury also found appellant guilty of Counts III (sexual battery–oral penetration) and IV (unlawful sexual activity with a minor). We reproduce that portion of the verdict form:

4

As to Count III (Mouth to Vagina), we find the Defendant

___X___ Guilty of SEXUAL BATTERY (VICTIM 12-17 YEARS OF AGE), as charged in the Information.

If you find the Defendant guilty, you must then answer the following question: Did the Defendant's mouth penetrate the female genitals of V.C.?

___X___ YES           _____NO

_____ Guilty of BATTERY, as contained in the Information.

_____ Not Guilty.

As to Count IV, we find the Defendant

___X___ Guilty of UNLAWFUL SEXUAL ACTIVITY WITH A MINOR, as charged in the Information.

If you find the Defendant guilty, you must then answer the following question: Did the Defendant's sexual organ or finger penetrate the female genitals of V.C.?

___X___ YES           _____NO

_____ Not Guilty.

The jury also found appellant guilty of false imprisonment. After the trial court denied appellant's motion for judgment of acquittal notwithstanding the verdict, appellant filed this appeal.

## Analysis

Appellant contends on appeal that the trial court committed fundamental error by instructing the jury using definitions contained in the 2022 amendment to section 794.011(1)(j), Florida Statutes (2022), rather than the definitions contained in the statute's 2020 version under which he was charged. The appellant concedes that the error was not preserved and must be analyzed for fundamental error. We first examine the conflict between the statutory definitions and then determine whether the use of the amended definitions constituted fundamental error.

### Statutory Definitions

The amended information, based on conduct that occurred on or about April 8, 2020, brought three counts of sexual battery in violation of section 794.011(5)(a), Florida Statutes (2019), and one count of unlawful sexual

activity with a minor in violation of section 794.05(1), Florida Statutes (2019).  In 2020, "sexual battery" and "sexual activity" were both defined as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object[.]"  § 794.011(1)(h), Fla. Stat. (2019); § 794.05(1), Fla. Stat. (2019).  Under those statutes' former versions, appellate courts conflicted on the meaning of vagina, because the statutes did not define the word.  *Compare Richards v. State*, 738 So. 2d 415, 419 (Fla. 2d DCA 1999) (finding vagina under the sexual battery statute as narrowly defined to the vaginal canal), with *Palumbo v. State*, 52 So. 3d 834, 834 (Fla. 5th DCA 2011) (finding vagina included the entire female private area).

However, in 2022, the Legislature amended these definitions to define "sexual battery" and "sexual activity" as "oral, anal, or **female genital** penetration by, or union with, the sexual organ of another or the anal or **female genital penetration** of another by any other object[.]" § 794.011(1)(j), Fla. Stat. (2022) (emphasis added); § 794.05(2)(b), Fla. Stat. (2022) (emphasis added).  Both statutes define "female genitals" as "the labia minora, labia majora, clitoris, vulva, hymen, and vagina." § 794.011(1)(b), Fla. Stat. (2022); § 794.05(2)(a), Fla. Stat. (2022).[1]

Here, although the state had alleged crimes occurring in 2020, the jury instructions for sexual battery and unlawful sexual activity with a minor described penetration or union with V.C.'s "female genitals" as defined in the amended 2022 statutes.  The jury should have been instructed using the 2020 statutes, which provided no such definition.  *See Allen v. State*, 324 So. 3d 920, 925 n.5 (Fla. 2021) (quoting *State v. Smith*, 547 So. 2d 613, 616 (Fla. 1989) ("[I]t is firmly established law that the statutes in effect at the time of commission of a crime control as to the offenses for which the perpetrator can be convicted, as well as the punishments which may be imposed.").

**Fundamental Error**

Because no objection to the charges were made at trial, appellant is entitled to reversal for the jury instruction errors only if the errors rise to

---

[1] Although "female genitals" was not used in the 2020 statute, "sexual organ" is used in both versions but not defined in either.  The common dictionary definition of that term encompasses any organ as part of the reproductive process.  *See Sexual Organ*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/sexual%20organ (last visited July 1, 2025) ("an organ of the reproductive system *especially*: an external generative organ —often used in plural").

the level of a fundamental error.  Such an error "must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003) (quoting *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960)).  "Thus, an error is deemed fundamental 'when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.'"  *Id.* (quoting *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998)).  With respect to jury instructions:

> To determine whether an instruction error vitiated the "validity of the trial," courts conduct a totality of the circumstances analysis.  *See Garzon v. State*, 980 So. 2d 1038, 1043 (Fla. 2008) (holding "the Fourth District was correct in examining the totality of the record to determine if the "and/or" instruction met the exacting requirements of fundamental instruction error"); *see also Hunter v. State*, 8 So. 3d 1052 (Fla. 2008); and *see Victorino v. State*, 23 So. 3d 87 (Fla. 2009).  Accordingly, if the totality of the circumstances indicates there is no reasonable possibility an alleged jury instruction error contributed to the verdict, the error is not fundamental.  *See id.*; *see also Farina v. State*, 937 So. 2d 612, 629 (Fla. 2006).

*Croom v. State*, 36 So. 3d 707, 709 (Fla. 1st DCA 2010).

Appellant contends that our opinion in *Flores v. State*, 391 So. 3d 481 (Fla. 4th DCA 2024), controls here.  Like this case, the sexual battery in *Flores* occurred before the statutory amendments, but the trial court had used the 2022 amended definitions in the jury instructions.  We concluded that the instructions should have been limited to "vaginal" penetration, rather than "female genital" penetration.  *Id.* at 484.  Because we had determined in *Firkey v. State*, 557 So. 2d 582, 585 n.3 (Fla. 4th DCA 1989) that "penetration of the "vagina" was limited to the passageway between the cervix uteri and the vulvae," we concluded that instructing the jury that it could convict based upon a finding of penetration of the female genitalia lessened the State's burden of proof:

> Instead, the State only had to prove that Appellant penetrated any part of the victim's genitals.  Accordingly, the use of the incorrect jury instruction with female genital penetration expanded the definition of vagina and reduced the State's burden of proof of a contested essential element.

391 So. 3d at 485. We concluded that the error was fundamental and reversed.

However, the facts in *Flores* were decidedly different than this case. There, the child victim referred to her genital area in general as her "private spots," which she described as "the front where she pees." *Id.* at 482. The victim's testimony was not clear as to where the defendant had touched or penetrated her. The victim could not remember whether the defendant had touched her inside her private area until being refreshed with her deposition testimony in which she testified that the defendant had gone inside her private area. "On cross-examination, the victim agreed that Appellant's fingers and tongue never went inside the hole at the bottom of her vagina." *Id* at 483. In other words, the victim's testimony was unclear as to exactly where the defendant had touched or penetrated her. Additionally, the defendant specifically argued that he did not commit sexual battery because, under *Firkey*, "penetration must be to the vaginal canal." *Id.* The State responded that "any amount of penetration to the female genitals constituted penetration." *Id.* Thus, exactly where the defendant had penetrated the victim was a disputed issue of fact, making the difference between the statutes' former and amended versions highly relevant.

In contrast, the victim in this case testified that appellant gave her "head," which she explained as "licking my vagina." Vaginal swab DNA testing found appellant's DNA. Furthermore, the verdict form for Count III was titled "(Mouth to Vagina)." Appellant did not contest where any oral contact had occurred, as his defense was that no sexual contact had occurred at all. The only evidence in the case that appellant's mouth had penetrated the victim was her testimony about him "licking [her] vagina," which the jury obviously credited. While the special interrogatory asked if appellant's mouth had penetrated the victim's "female genitals," the trial testimony limited the genitals to the vagina. No other part of the victim's female genitalia was mentioned. Thus, unlike *Flores*, this was not a case where the exact point of penetration was at issue. The victim specifically testified that appellant licked her "vagina," which was sufficient for a jury to find that appellant "ha[d] union and/or penetrat[ed] her vagina with his mouth" as charged in the information. Under the totality of the circumstances, the jury could not have been misled by the amended section 794.011(1)'s more expansive definitions in the jury instruction. Thus, no fundamental error occurred as to Count III.

We conclude differently on Count IV. Count IV's jury instruction required the jury to determine whether appellant had engaged in sexual activity with the minor victim, which the instruction defined as "oral, anal,

8

or female genital penetration by, or union with the sexual organ of another, or the anal or female genital penetration of another by any object" from section 794.05's 2022 amended version, rather than vaginal penetration from that section's 2020 former version. The jury found appellant guilty of such conduct but then also answered the special interrogatory finding that appellant's "sexual organ or finger [had] penetrated the female genitals of V.C." The special interrogatory did not ask whether appellant's mouth had penetrated V.C.'s female genitals. If the special interrogatory had included "mouth," and the jury had answered yes, then the entire verdict on Count IV would be consistent with the verdict on Count III. As Count IV's instruction was phrased, however, that count's verdict form question pushed the jury to consider only penile or object union or penetration as the unlawful sexual activity.

As the jury found appellant not guilty of penile penetration or object penetration, but found appellant guilty of battery as a lesser included of object penetration, answering "Yes" to the question of sexual organ or object penetration on Count IV is seemingly contrary to those findings. However, such a result may be reconciled if the jury had used the erroneous instruction regarding the definition of female genitalia to conclude that a touching of V.C.'s external private parts constituted the unlawful sexual activity, and the penetration could be appellant's use of his finger to "penetrate" the "labia minora, the labia majora, clitoris, [or] vulva" without reaching the vagina. This would explain both Count IV's finding of guilty as well as a finding of penetration by fingers. Thus, based upon a totality of the circumstances, the jury could not have reached its Count IV findings without having followed the erroneous instruction. For this reason, we conclude that fundamental error occurred in the Count IV instruction's use of the definitions from section 794.05's 2022 amended version.

## Conclusion

Without objection by either the State or appellant, the trial court used the 2022 amended statutory definition of female genitalia in instructing the jury in the trial for sexual battery and unlawful sexual activity with a minor. That definition was more expansive than the 2020 version and reduced the State's burden of proof. Regarding Count III's guilty finding for oral penetration of the victim's vagina, however, the erroneous instruction did not amount to fundamental error under the totality of the circumstances in this case. But the erroneous instruction requires us to reverse appellant's conviction on Count IV for unlawful sexual activity with a minor, because under a totality of the circumstances review, the jury verdict could not have been reached without the assistance of the

9

erroneous instruction. Because of our reversal of Count IV, we do not address the remaining issue raised by appellant directed to that count. We remand for a new trial on Count IV using a jury instruction based on section 794.05's 2020 version.

*Affirmed in part; reversed in part and remanded for further proceedings.*

GERBER, J., concurs.
FORST, J., concurs in part and dissents in part with opinion.

FORST, J., concurring in part and dissenting in part.

I concur with the majority opinion's affirmance of the Count III guilty verdict. I respectfully dissent with respect to the reversal of Count IV—I disagree with the majority's conclusion that giving the 2022 definitions for this count constituted fundamental error.

Appellant was charged under Count IV with unlawful sexual activity with a minor, based on oral, anal or vaginal union or penetration. The jury convicted him and then answered "yes" to a special interrogatory asking, "Did the Defendant's sexual organ or finger penetrate the female genitals of [the victim]?"

The jurors were not asked (and thus did not answer) whether they additionally found oral penetration, or oral, digital, or vaginal "union." Moreover, unlike other counts for which there was either an acquittal (Count I) or a conviction for a lessor-included offense (Count II), lack of consent was not an element of Count IV, as a defendant would be guilty even if the sexual activity was otherwise "consensual" so long as the "victim" was 16 or 17 years old and the offender was 24 or older at the time the act was committed. *See* § 794.05(1), Florida Statutes (2019). Thus, as posited by the State's Answer Brief, there are scenarios in which seemingly contradictory findings could be reconciled. Applying the fundamental error standard, I cannot conclude that "a verdict of guilty [under Count IV] could not have been obtained without the assistance of the alleged error." *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003) (quoting *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960)).

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**